337 So.2d 475 (1976)
STATE of Louisiana
v.
Frank Brent McCARROLL and Earl McCarroll.
STATE of Louisiana
v.
Bobby MOORE.
Nos. 57695, 57728.
Supreme Court of Louisiana.
September 13, 1976.
*477 L. B. Ponder, Jr., Ponder & Ponder, Amite, for defendants-relators Frank B. McCarroll and Louis E. McCarroll.
Gordon W. Matheny, Cosner & Matheny, Hammond, for defendant-relator Bobby Moore.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Leonard E. Yokum, Dist. Atty., William M. Quin, Asst. Dist. Atty., for plaintiff-respondent.
DENNIS, Justice.
Defendants, Frank Brent McCarroll and Earl McCarroll, were charged by bill of information with nine counts of aggravated assault, violations of La.R.S. 14:37. After a jury trial, each was convicted of eight counts of aggravated assault and sentenced to serve six months on each count; Frank McCarroll's sentences were made to run consecutively, amounting to a four year term, but Earl McCarroll's sentences were made to run concurrently in part so that the time to be served totalled two years. Defendant Moore was charged with ten counts of aggravated assault and with the simple battery of one of the assault victims, a violation of La.R.S. 14:35. He pleaded guilty to all the charges against him and was sentenced to serve six months on each count with the sentences running concurrently on the charge of battery and on one count of assault, and consecutively on the remaining counts of aggravated assault, so that his total time to be served was four and one half years. This Court granted writs of review to consider defendants' allegations that they were entitled to a trial by jury and the McCarrolls' further claim that the multiple charges of aggravated assault deriving from the same occurrence offended the double jeopardy provisions of the state and federal constitutions.
On the evening of November 4, 1975, defendants, armed with automatic shotguns, entered `Lil Johnny's Seafood Restaurant located south of Hammond where a group of men had gathered to discuss politics. Defendants brandished their weapons and warned that anyone who moved would be killed. They claimed to be looking for a particular individual, but even after they saw that he was not present, they remained threatening the group with their shotguns for some 20-30 minutes before leaving. The district attorney charged defendants with one count of assault for each victim present in the restaurant during this incident.

DOUBLE JEOPARDY
After their conviction but prior to sentencing defendants Frank and Earl McCarroll filed a plea of double jeopardy and a motion in arrest of judgment based in part on the double jeopardy claim; these motions were denied following a hearing. Defendants maintain that further proceedings against them were barred by the State's acceptance of their co-defendant Babby Moore's guilty plea or, alternatively, by the court's directed verdict of acquittal on one count of aggravated assault granted on their motion after the close of the State's evidence. These arguments are not well taken.
The Fifth Amendment to the United States Constitution provides, in pertinent part:
"* * * [N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb * * *."
Correspondingly, Article I, § 15 of the Louisiana Constitution (1974) provides:
"No person shall be twice placed in jeopardy for the same offense, except on his application for a new trial, when a mistrial is declared, or when a motion in arrest of judgment is sustained."
The federal guaranty, made applicable to the states in Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), embodies a dual protection: against multiple prosecutions and against multiple punishments for the same offense. North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).
La. Code of Criminal Procedure article 592 provides that "when a defendant pleads guilty, jeopardy begins when a valid *478 sentence is imposed." However, we think it clear that jeopardy attaches only to that defendant pleading guilty; thus, when Bobby Moore pleaded guilty, jeopardy did not begin for defendants Frank and Earl McCarroll, who were not thereby subjected to the threat of punishment. Consequently, their subsequent trial did not offend the guaranty against double jeopardy.
Furthermore, defendants' rights were not violated when their trial continued after the entry of a directed verdict on one count of assault. The restriction on multiple prosecutions is designed to promote judicial economy and to safeguard the defendant from the harassment and stigma of repeated prosecutions. See Comment, Statutory Implementation of Double Jeopardy Clauses: New Life for a Moribund Constitutional Guarantee, 65 Yale L.J. 339 (1956). The procedure involved in the instant case was neither harassing nor wasteful. To the contrary, the joinder of all the assault charges for trial obviated the dangers inherent in multiple prosecutions and is the constitutionally favored procedure. La.C.Cr.P. art. 493. See, Comment, Twice in Jeopardy, 75 Yale L.J. 262, 292 (1965); and Justice Brennan's concurring opinion in Ashe v. Swenson, 397 U.S. 436, 448, 90 S.Ct. 1189, 1197, 25 L.Ed.2d 469 (1970). The disposition of the various counts at different stages in the trial did not segment this single proceeding into multiple prosecutions.
Of legitimate concern, however, is the question whether defendants were punished more than once for the same offense, since the multiplicity of charges involved here arose out of the same course of criminal conduct. It was early established that "the Constitution was designed as much to prevent the criminal from being twice punished for the same offense as from being twice tried for it." Ex parte Lange, 18 Wall. (85 U.S.) 163, 173, 21 L.Ed. 872 (1873); North Carolina v. Pearce, supra. This principle limits judicial interpretation of substantive criminal law: it prevents courts and prosecutors from creating several offenses where the legislature intended only one. It does not, however, curtail the authority of the legislature:
"The primary substantive problem is one of legislative intent, not legislative power, for the legislature can award as many different penalties as it deems desirable for a given act or transaction, or any aspect of an act or transaction, as long as the statute accords substantive due process of law and avoids the eighth amendment's prohibition of cruel and unusual punishments. This authority is inherent in the power to make conduct criminal and to penalize it, and is not limited in any meaningful sense by the concept of double jeopardy." Comment, 65 Yale L.J. 339, 363-64.
Thus, while we do not question the power of the legislature to multiply the number of offenses in this instance by the number of assaulted victims, we must examine whether it did in fact do so. The issue resolves itself into one of statutory interpretation.
Courts have had difficulty in determining whether a single statutory provision is violated more than once on a single occasion when the defendant was dealing with two or more subjects or victims. Mr. Chief Justice Warren, dissenting in Gore v. United States, 357 U.S. 386, 393, 78 S.Ct. 1280, 2 L.Ed.2d 1405, 1411 (1958), discussed the complexities of this and a related problem:
"The problem of multiple punishment is a vexing and recurring one. It arises in one of two broad contexts: (a) a statute or a portion thereof proscribes designated conduct, and the question is whether the defendant's conduct constitutes more than one violation of this proscription. Thus, murdering two people simultaneously might well warrant two punishments but stealing two one-dollar bills might not. (b) Two statutes or two portions of a single statute proscribe certain conduct, and the question is whether the defendant can be punished twice because his conduct violates both proscriptions. Thus, selling liquor on a Sunday might warrant two punishments for violating a prohibition law and a blue law, but feloniously entering a bank and robbing a *479 bank, though violative or two statutes, might warrant but a single punishment." 357 U.S. at 393, 78 S.Ct. at 1285, 2 L.Ed.2d at 1411.
In deciding whether a defendant's conduct constitutes more than one violation of a federal statute the high court has held that when Congress has not explicitly stated the unit of offense, the doubt will be resolved in favor of lenity. This policy means that the court will not interpret a federal criminal statute so as to multiply the penalty that it places on an individual when the effectuation of any valid purpose of the statute would not require more than one penalty. Ladner v. United States, 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958) (a single discharge of a shotgun would constitute only a single violation of a federal statute penalizing assault on a federal officer even though more than one officer was affected thereby); Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955) (Mann Act did not expressly make the simultaneous interstate transportation of more than one woman for the purpose of prostitution liable to cumulative punishment for each woman transported).
In view of our well established doctrine that criminal and penal laws are to be strictly construed, La.R.S. 14:3, State v. Gyles, 313 So.2d 799 (La.1975), State v. Penniman, 224 La. 95, 68 So.2d 770 (1953), State v. Truby, 211 La. 178, 29 So.2d 758 (1947), we will adopt a similar approach in ascertaining what the legislature intended in enacting the aggravated assault statute.
We note first that the definition and proscription of this crime are included in Part II of the La. Criminal Code entitled "Offenses Against the Person." Aggravated assault is defined by La.R.S. 14:36-37 as follows:
"§ 37. Aggravated assault is an assault committed with a dangerous weapon. * * *
"§ 36. Assault is an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery."
La.R.S. 14:33 defines battery as follows:
"Battery is the intentional use of force or violence upon the person of another; or the intentional administration of a poison or other noxious liquid or substance to another."
A reading of these statutes indicates that the legislature's aim was to protect each citizen from the defined criminal conduct. Unlike the United States Supreme Court in reading the federal statutes in Bell and Ladner, supra, we cannot conceive of any other governmental purpose or interest to be served by our state aggravated assault statute. Consequently, we conclude that the legislature intended to create multiple offenses from a single act of aggravated assault affecting more than one person.
Therefore, we find no merit in defendants' double jeopardy arguments.

RIGHT TO A JURY TRIAL
All three defendants argue that because each of their cumulated sentences exceeded six months they were entitled to a jury trial. The McCarrolls claim that the deprivation of this right rendered their conviction and sentence null. Moore asserts that because he was not apprised of his right to a jury trial his guilty plea was not a valid waiver of that right.
In Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), the United States Supreme Court held that the Sixth Amendment, as applied to the states through the Fourteenth, requires that defendants accused of "serious crimes" be afforded the right to trial by jury. Later, the Court defined serious crimes as those in which the possible penalty exceeds six months imprisonment. Baldwin v. New York, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970). These principles are reflected in Article I, § 17 of the 1974 Louisiana Constitution, which provides in pertinent part:
"* * * A case in which the punishment may be confinement at hard labor or confinement without hard labor for more than six months shall be tried before *480 a jury of six persons, five of whom must concur to render a verdict. * * *"
And La. Code of Criminal Procedure article 779 likewise provides:
"A. A defendant charged with a misdemeanor in which the punishment may be a fine in excess of five hundred dollars or imprisonment for more than six months shall be tried by a jury of six jurors, five of whom must concur to render a verdict.
"B. The defendant charged with any other misdemeanor shall be tried by the court without a jury."
Construing the predecessor of this article, we held that where two or more separate offenses were consolidated for trial, the penalties would not be aggregated in order to determine the right to a jury trial. City of Monroe v. Wilhite, 255 La. 838, 233 So.2d 535 (1970), cert, denied 400 U.S. 910, 91 S.Ct. 136, 27 L.Ed.2d 150 (1970). We stated that the right to a jury trial is tested by the punishment authorized for each particular offense, and declined to alter this rule where charges were joined for trial. See also, State v. Robertson, 310 So.2d 619 (La. 1975).
However, we must disregard the holding in Wilhite in light of Codispoti v. Pennsylvania, 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974) and Art. I, § 17, La.Const. (1974). In Codispoti the defendants had been tried before a judge on several charges of contempt which had arisen from a single proceeding. The trial judge imposed a separate sentence of six months or less for each contempt and also determined that the individual sentences were to run consecutively rather than concurrently. The United States Supreme Court found that "* * * [i]n terms of the sentence imposed, which was obviously several times more than six months, each contemnor was tried for what was equivalent to a serious offense and was entitled to a jury trial." 418 U.S. at 517, 94 S.Ct. at 2693. The Court also expressly rejected the reasoning which supported our decision in Wilhite:
"We find unavailing respondent's contrary argument that petitioners' contempts were separate offenses and that, because no more than a six months' sentence was imposed for any single offense, each contempt was necessarily a petty offense triable without a jury. Notwithstanding respondent's characterization of the proceeding, the salient fact remains that the contempts arose from a single trial, were charged by a single judge, and were tried in a single proceeding. The individual sentences imposed were then aggregated, one sentence taking account of the others and not beginning until the immediately preceding sentence had expired." Id.
A jury trial was also required in this case by the wording of our constitutional provision, supra, which hinges the right not upon the penalty carried by the particular charge for which an accused is tried, but upon the punishment which may be imposed in each case. La.Const. Art. I, § 17 (1974). Therefore, where two or more charges are joined for trial the right to a jury must be determined by the total punishment which may be imposed in that case.
Although the right to a jury trial may be waived in a non-capital case, Art. I, § 17 requires that the waiver be "knowingly and intelligently" made. Therefore, we must indulge every reasonable presumption against waiver of this, fundamental right. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962). The record in this case reveals that defendants were not informed of their right to a jury trial at the time of the arraignment nor at any other time. Indeed, according to our latest expressions on the subject at the time of the guilty plea and the trial herein, it was not apparent to the trial judge or counsel that defendants were entitled to a jury trial in this case. City of Monroe v. Wilhite, supra, State v. Robertson, supra. Under the circumstances of this case, therefore, we find that there was no "knowing and intelligent" waiver of *481 the right to a jury trial by any of the defendants.

RIGHT TO APPEAL
Consistent with our decision that defendants were entitled to a jury trial by virtue of the aggregated penalty which might have been imposed in the case, we find that defendants had a right to appeal their convictions and should not have been required to seek a writ of review. Article V, § 5(D) of the 1974 Louisiana Constitution provides "* * * a case shall be appealable to the supreme court if . . . (2) the defendant has been convicted of a felony or a fine exceeding five hundred dollars or imprisonment exceeding six months actually has been imposed." (Emphasis supplied). As in the provision relating to the right to a jury trial, the constitutional right to a direct appeal depends on the seriousness of a particular case, rather than the individual charged involved, as determined by the punishment actually imposed in that case. Under the clear wording of the constitution, defendants, whose aggregated sentences totalled from two to four and a half years, were entitled to a direct appeal to this Court.
For the reasons assigned, the guilty plea and sentences of Bobby Moore are set aside, and his case is remanded to the trial court for rearraignment and further proceedings, including a new trial, according to law and consistent with the views herein expressed. The convictions and sentences of the McCarrolls are also reversed and their case is remanded for a new trial consistent with the views expressed herein.
SUMMERS, J., dissented.