453 So.2d 259 (1984)
STATE of Louisiana
v.
George VIETO.
No. 84-K-129.
Court of Appeal of Louisiana, Fifth Circuit.
May 30, 1984.
As Corrected August 13, 1984.
Writ Denied June 25, 1984.
*260 Mark McTernan, McTernan, Parr & Rumage, New Orleans, for relator George Vieto.
William C. Credo, III, Asst. Dist. Atty., Gretna, for respondent State of La.
Before BOUTALL, KLIEBERT and GAUDIN, JJ.

ON APPLICATION FOR SUPERVISORY WRITS
BOUTALL, Judge.
George Vieto has applied to this court for supervisory writs directed to the First Parish Court for the Parish of Jefferson, State of Louisiana complaining of his denial of a jury trial under a bill of information in which he was charged with violation of LRS 14:98, driving a motor vehicle while under the influence of an intoxicating liquor, and LRS 14:99, reckless operation of a motor vehicle. The nature of the writs sought is not specified, but presumably he seeks a writ of certiorari to determine the correctness of the judge's ruling and the writ of mandamus ordering a jury trial.
The procedural posture under which this matter comes before us is that Vieto was charged in a single bill of information with two counts, one violation of LRS 14:98 (DWI), and the other on the 14:99 (ROMV). After entry of a plea of not guilty and various pre-trial motions being disposed of, the matter was set for trial on February 23, 1984, and on the day of trial, Vieto filed a motion for jury trial which, after argument, was denied by the presiding judge. Vieto then notified the court of his intention to apply to this court for supervisory writs, whereupon the trial judge stayed further proceedings in the case until this court should act upon the application. Vieto has now applied to this court raising two issues: (1) Is the defendant entitled by law to be tried by a jury of his peers?; and (2) Are Article 1, Section 17 of the Louisiana Constitution of 1974 and the Code of Criminal Procedure Article 493.1 unconstitutional insofar as they denied defendant the right to a jury trial? These issues were presented below and are presented here purely on a legal question.
We have considered this matter on the basis on which it has been presented, and we find no error in the ruling of the trial court. In reaching this conclusion, we have considered the legal history expounded in our judicial system and in the statutory and constitutional laws of this state. Because of the importance of this issue and the numerous cases pending in the courts under our jurisdiction, we set forth the basis of our reasons.
The Louisiana system of criminal offenses, prosecution and punishment has been altered in past years to bring the system into consistency with generally accepted federal and state guidelines relating to the applicability of jury trials. The foundation principle is that expressed in the Sixth Amendment to the Constitution of the United States which provides in pertinent part:
"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the state and district wherein the crime shall have been committed, * * * *"
Is the interpretation of this amendment and its application to the right of jury trial consistent with the balance of the rights of an individual accused of a crime and the necessity of governmental imposition of a fair and equitable system of justice in an orderly and efficient manner? In this regard we note the case of Smith v. State of Alabama, 124 U.S. 465, 8 S.Ct. 564, 569, 31 *261 L.Ed.2d 508, 512 (1888) in which the Supreme Court observed:
"There is, however, one clear exception to the statement that there is no national common law. The interpretation of the Constitution of the United States is necessarily influenced by the fact that its provisions are framed in the language of the English common law, and are to be read in the light of its history."
Accordingly, in ascertaining the meaning of the phrase, "In all criminal prosecutions, [emphasis added) the accused shall enjoy the right to a ... trial, by ... jury...." taken from the Bill of Rights, reference must be made to the common law from which it was taken.
As noted in United States v. Wong Kim Ark., 169 U.S. 649, 654, 18 S.Ct. 456, 459, 42 L.Ed. 890, 892 (1898):
"In this, as in other respects, it [a constitutional provision] must be interpreted in the light of the common law, the principles and history of which were familiarly known to the framers of the constitution. [Citations omitted]"
In Schick v. United States, 195 U.S. 65, 24 S.Ct. 826, 827, 49 L.Ed. 99 (1904), the Supreme Court utilized the definition from Blackstone's Commentaries to define "crimes" noting that "Blackstones Commentaries are accepted as the most satisfactory exposition of the common law of England."
The following definition is stated in Schick, supra, 24 S.Ct. at page 827:
"A crime, or misdemeanor, is an act committed, or omitted, in violation of a public law either forbidding or commanding it. This general definition comprehends both crimes and misdemeanors; which, properly speaking, are mere synonymous terms; though in common usage the word `crimes' is made to denote such offenses as are of a deeper and more atrocious dye; while smaller faults and omissions of less consequence are comprised under the gentler name of the `misdemeanors' only."
The opinion continues:
"In the light of this definition we can appreciate the action of the convention which framed the Constitution. In the draft of that instrument, as reported by the committee of five, the language was "the trial of all criminal offenses ... shall be by jury, `but by unanimous vote it was amended so as to read `the trial of all crimes.' The significance of this change cannot be misunderstood. If the language had remained `criminal offenses,' it might have been contended that it meant all offenses of a criminal nature, petty as well as serious; but when the change was made from `criminal offenses' to `crimes,' and made in the light of the popular understanding of the meaning of the word `crimes,' as stated by Blackstone, it is obvious that the intent was to exclude from the constitutional requirement of a jury the trial of petty criminal offenses." Schick, supra, 24 S.Ct. at page 827.
By so holding, the court in Schick, supra, confirmed the ruling in Callan v. Wilson, 127 U.S. 540, 555, 8 S.Ct. 1301, 1306, 32 L.Ed. 223 (1888) which conceded "that there is a class of petty minor offenses not usually embraced in public criminal statutes, and not of the class or grade triable at common law by a jury...."
In District of Columbia v. Clawans, 300 U.S. 617, 624, 57 S.Ct. 660, 662, 81 L.Ed. 843 (1937), the court recognized as "well settled" the principle "that the right of trial by jury, ... does not extend to every criminal proceeding." To distinguish which offenses were to be deemed "petty", the court considered the severity of the penalty as an element to be assessed in determining whether a statutory offense entitled an accused to a jury trial. The court concluded, after examining the standards which prevailed at the time of the adoption of the Constitution, that a possible penalty of ninety days was insufficient to invoke the right to a jury trial. We note the court's approach to and solution of the problem:
"We are aware that those standards of action and of policy which find expression in the common and statute law may *262 vary from generation to generation. Such change has led to the abandonment of the lash and the stocks, and we may assume, for present purposes, the commonly accepted views of the severity of punishment by imprisonment may become so modified that a penalty once thought to be mild may come to be regarded as so harsh as to call for the jury trial, which the Constitution prescribes, in some cases which were triable without a jury when the Constitution was adopted. [Citations omitted]. But we may doubt whether summary trial with punishment of more than six months' imprisonment, prescribed by some pre-Revolutionary statutes, [Footnote omitted] is admissible, without concluding that a penalty of ninety days is too much. Doubts must be resolved, not subjectively by recourse of the judge to his own sympathy and emotions, but by objective standards such as may be observed in the laws and practices of the community taken as a gauge of its social and ethical judgments." District of Columbia v. Clawans, supra, at 300 U.S. 627-628, 57 S.Ct. 663.
Citing 18 U.S.C. Section 1 (1964 ed)[1]; the Supreme Court in Cheff v. Schnackenberg, 384 U.S. 373, 380, 86 S.Ct. 1523, 1526, 16 L.Ed.2d 629 (1966) held "in the exercise of the Court's supervisory power ... we rule... that sentences exceeding six months... may not be imposed by federal courts absent a jury trial or waiver thereof." Distinguishing the Cheff, supra, case as uniquely applying to contempt proceedings, the Supreme Court in Duncan v. State of Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968) declined to adopt the federal standard as controlling in a state case but decided "that a crime punishable by two years in prison is, based on past and contemporary standards in this country, a serious crime and not a petty offense. [Footnote omitted]" Ibid at 391 U.S. 162, 88 S.Ct. 1454. However, the decision in Duncan, supra, recognized that the Sixth Amendment right to a jury trial in a serious case extended to the states and squarely addressed the issue of whether it was the sentence authorized for a particular offense or the penalty actually imposed which determined the seriousness of the crime charged. Citing District of Columbia v. Clawans, supra, the court noted at 391 U.S. 160, 88 S.Ct. 1453 "[t]he penalty authorized by the law of the locality may be taken `as a gauge of its social and ethical judgments.' (Citations omitted]"
But the court observed:
"[T]he boundaries of the petty offense category have always been ill-defined, if not ambulatory. In the absence of an explicit constitutional provision, the definitional task necessarily falls on the courts, which must either pass upon the validity of legislative attempts to identify those petty offenses which are exempt from jury trial or, where the legislature has not addressed itself to the problem, themselves face the question in the first instance. In either case it is necessary to draw a line in the spectrum of crime, separating petty from serious infractions. This process, although essential, cannot be wholly satisfactory, for it requires attaching different consequences to events which, when they lie near the line, actually differ very little. Duncan, supra at 391 U.S. 160-161, 88 S.Ct. 1453.
In Baldwin v. New York, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970), the line was drawn. After surveying the laws of the federal system and of the states, the court noted that the City of New York was alone in denying to an accused a jury trial where the authorized sentence exceeded six months' imprisonment. The court states some of its consideration of the problem:
"This near-uniform judgment of the Nation furnishes us with the only objective criterion by which a line could ever be drawnon the basis of the possible penalty alonebetween offenses that are and that are not regarded as `serious' for *263 purposes of trial by jury. [Footnote omitted]
"Of necessity, the task of drawing a line `requires attaching different consequences to events which, when they lie near the line, actually differ very little.' Duncan v. Louisiana, supra, [391 U.S.] at 161, 88 S.Ct., at 1453. One who is threatened with the possibility of imprisonment for six months may find little difference between the potential consequences that face him, and the consequences that faced appellant here. Indeed, the prospect of imprisonment for however short a time will seldom be viewed by the accused as a trivial or `petty' matter and may well result in quite serious repercussions affecting his career and his reputation. Where the accused cannot possibly face more than six months' imprisonment, we have held that these disadvantages, onerous though they may be, may be outweighed by the benefits that result from speedy and inexpensive non-jury adjudications. We cannot, however, conclude that these administrative conveniences, in light of the practices that now exist in every one of the 50 States as well as in the federal courts, can similarly justify denying an accused the important right to trial by jury where the possible penalty exceeds six months' imprisonment. [Footnote omitted]" Baldwin v. New York, supra, at 399 U.S. 71-72, 90 S.Ct. 1890-1891.
In this context, the Louisiana Constitution was adopted in 1974. L.S.A. Const. Art. 1, Sect. 17 provides in pertinent part:
"A case in which the punishment may be confinement at hard labor or confinement without hard labor for more than six months shall be tried before a jury of six persons, ...."
Similarly, a number of criminal statutes were changed as to severity of penalty in order to conform with the principle of a legislatively imposed recognition of sentence as a basis for determination of the petty offense exempt from jury trial. The applicant in this case has demonstrated no other basis.
But until 1976, the aggregation of punishments on charges joined for trial posed no problem as regards the right to a jury trial. In City of Monroe v. Wilhite, 233 So.2d 535, 536 (La.1970), cert. denied 400 U.S. 910, 91 S.Ct. 136, 27 L.Ed.2d 150 (1960), the court held:
"No justification can be found in the constitutional and statutory authority for aggregating the penalties authorized for two or more separate offenses to determine the right to a jury trial. The right to a jury trial is tested by the punishment authorized for the particular offense. The consolidation of the cases for trial does not alter this rule. Consolidation is a procedural devise to conserve trial time.
See also State v. Robertson, 310 So.2d 619 (La.1975).
However, during 1974, the United States Supreme Court rendered Codispoti v. Pennsylvania, 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974). The defendants, Dominick Codispoti and Herbert Langnes, were charged with multiple counts of contempt of court, which allegedly occurred during a criminal trial. After hearing, the defendants were adjudged guilty and sentenced summarily. But the sentences, although individually within the six month limitation set by Baldwin, supra, were ordered served consecutively, resulting in an aggregated penalty of longer than six months. The defendants argued successfully that the trial judge wrongly denied the defense motion for a jury trial in the light of the punishment received.
The Codispoti court reversed the trial court's ruling that the defendants were not entitled to a jury trial because no term of imprisonment in excess of six months was imposed for any one offense, holding:
"In the case before us, the original trial judge filed the contempt charges against these petitioners, while another judge tried them and imposed the sentences. Because the latter had the power to impose consecutive sentences, as he did here, guilt or innocence on the individual charges bore heavily on the ultimate sentence *264 and was of critical importance. Here the contempts against each petitioner was tried seriatim in one proceeding, and the trial judge not only imposed a separate sentence for each contempt but also determined that the individual sentences were to run consecutively rather than concurrently, a ruling which necessarily extended the prison term to be served beyond that allowable for a petty criminal offense. As a result of this single proceeding, Codispoti was sentenced to three years and three months for his seven contemptuous acts, Langnes to two years and eight months for his six contempts. In terms of the sentence imposed, which was obviously several times more than six months, each contemnor was tried for what was equivalent to a serious offense and was entitled to a jury trial.
"We find unavailing respondent's contrary argument that petitioners' contempts were separate offenses and that, because no more than a six months' sentence was imposed for any single offense, each contempt was necessarily a petty offense triable without a jury. Notwithstanding respondents' characterization of the proceeding, the salient fact remains that the contempts arose from a single trial, were charged by a single judge, and were tried in a single proceeding. The individual sentences imposed were then aggregated, one sentence taking account of the others and not beginning until the immediately preceding sentence had expired." Supra, at 418 U.S. 516-517, 94 S.Ct. 2693-2694.
The Louisiana Supreme Court determined Codispoti, supra, and the Louisiana Constitution, Article 1, Section 17, quoted supra, to require a jury trial in each case where the punishment which could be imposed exceeded six months' imprisonment and held in State v. McCarroll, 337 So.2d 475, 480 (La.1976), "where two or more charges are joined for trial the right to a jury must be determined by the total punishment which may be imposed in that case."
The result of McCarroll, supra, was that whenever two or more charges were either joined by bill of information as by C.Cr.P. Article 493 or consolidated for trial as by C.Cr.P. 706, the defendant was entitled to a trial by jury if the potential aggregate imprisonment exceeded six months (or if a fine in excess of $500 could be imposed). See State v. Nettleton, 367 So.2d 755 (La.1979), State v. Jones, 396 So.2d 1272 (La.1981), and State v. Williams, 404 So.2d 954 (La.1981).
The jurisprudence developed a few caveats for the exercise of the defendant's constitutional right to a trial by jury. If the state joined counts pursuant to C.Cr.P. Article 493, they could not later request a severance merely to defeat a jury trial request. See State v. Jones, supra. Nor if the state proceeded with separate bills could a consolidation be opposed merely because the resultant "case" would entitle a defendant to a jury trial. See State v. Nettleton, 367 So.2d 755 (La.1979), but also see State v. Comeaux, 408 So.2d 1099 (La. 1981). Additionally, in cases where a jury is mandated, the Constitution requires that any waiver be "knowingly and intelligently" made and every reasonable presumption against a waiver of the right must be indulged. See McCarroll, supra; Williams, supra. Where the record does not reflect an informed waiver, a reversal is unavoidable. See State v. Williams, supra; State v. Laurendine, 439 So.2d 398 (La.1983).
In State v. Grimble, 397 So.2d 1254 (La. 1980), a solution was suggested. Curtis Grimble, the defendant, was charged by a two-count information with D.W.I. (R.S. 14:98) and negligent injuring (R.S. 14:39), each of which is punishable by a maximum of six months' imprisonment and a fine of either $400 (R.S. 14:98) or $500 (R.S. 14:39). In arguing a motion to sever, the defense noted that he was entitled to a trial by jury. The trial judge acknowledged the correctness of the assertion, and to overcome the dilemma presented, he acceded to the state's request and agreed to instruct himself that the accused's punishment would *265 not exceed six months' imprisonment even in the event of a conviction of both counts. Since the defendant's exposure to a "non-petty" term of imprisonment was thus ended, the trial court ruled there was no entitlement to a jury.
A majority of the Supreme Court disagreed and ruled as follows:
"The state's contention that the trial court might effectively curtail an accused's right to jury trial by agreeing in advance to a limitation of sentence in the event of conviction was impliedly rejected in both McCarroll and in Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). [Footnote omitted]. In placing emphasis upon maximum sentence exposure, McCarroll emphasizes that it is the legislative determination of an offense's seriousness which entitles an accused to jury trial and not the possibly arbitrary decision-making of the trial court." Grimble, supra, at 1256. See also State v. Jones, supra.

Grimble apparently forms the basis for the contested statute, C.Cr.P. Article 493.1, which provides:
"[w]henever two or more misdemeanors are joined in accordance with Article 493 in the same indictment or information, the maximum aggregate penalty that may be imposed for the misdemeanors shall not exceed imprisonment for more than six months or a fine of more than five hundred dollars, or both."
The thrust of the argument against the solution proposed by the trial judge in Grimble, supra, is as noted previously, that the decision of the trial court not to aggregate penalties may be exercised arbitrarily by the judge instead of being legislatively determined. See Grimble, supra, at 1256.
It is the fear of arbitrary action by the judiciary which initiated the jury system. As the Supreme Court observed in Duncan v. Louisiana, at 391 U.S. 156, 88 S.Ct. 1451:
"Those who wrote our constitutions knew from history and experience that it was necessary to protect against unfounded criminal charges brought to eliminate enemies and against judges too responsive to the voice of higher authority. The framers of the constitutions strove to create an independent judiciary but insisted upon further protection against arbitrary action. Providing an accused with the right to be tried by a jury of his peers gave him an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge. If the defendant preferred the common-sense judgment of a jury to the more tutored but perhaps less sympathetic reaction of the single judge, he was to have it. Beyond this, the jury trial provisions in the Federal and State Constitutions reflect a fundamental decision about the exercise of official powera reluctance to entrust plenary powers over the life and liberty of the citizen to one judge or to a group of judges. Fear of unchecked power, so typical of our State and Federal Governments in other respects, found expression in the criminal law in this insistence upon community participation in the determination of guilt or innocence. The deep commitment of the Nation to the right of jury trial in serious criminal cases as a defense against arbitrary law enforcement qualifies for protection under the Due Process Clause of the Fourteenth Amendment, and must therefore be respected by the States."
Likewise, the court in Codispoti, supra, at 418 U.S. 515-516, 94 S.Ct. 2693 observed:
"Moreover, it is normally the trial judge who, in retrospect, determines which and how many acts of contempt the citation will cover. It is also he or, as is the case here, another judge who will determine guilt or innocence absent a jury, who will impose the sentences and who will determine whether they will run consecutively or concurrently. In the context of the post-verdict adjudication of various acts of contempt, it appears to us that there is posed the very likelihood of arbitrary action that the requirement of jury trial *266 was intended to avoid or alleviate." [Citation omitted]
With the intervention of the legislature, the result is no longer arbitrary or offensive to due process. The contested codal provision ensures that similarly situated defendants will be treated similarly and that none will be exposed to severity of sentence beyond that legislatively provided.
Accordingly, we find the ruling of the trial court denying jury trial is correct. The stay order staying the proceedings is cancelled and annulled, and this case is remanded to the trial court for further proceedings consistent with the opinion expressed herein.
NOTES
[1] "Any misdemeanor, the penalty for which does not exceed imprisonment for a period of six months or a fine of not more than $500.00, or both, is a petty offense."