463 So.2d 761 (1985)
STATE of Louisiana
v.
Philip W. LANDRY.
No. 84-KA-221.
Court of Appeal of Louisiana, Fifth Circuit.
January 14, 1985.
Writ Denied March 15, 1985.
*762 John M. Mamoulides, Dist. Atty., Dorothy A. Pendergast, Louise Korns, Asst. Dist. Attys., Gretna, for plaintiff-appellee.
Mark McTernan, McTernan, Parr & Rumage, New Orleans, for defendant-appellant.
Before CURRAULT, GAUDIN and DUFRESNE, JJ.
CURRAULT, Judge.
Philip W. Landry was charged in a Jefferson Parish complaint-affidavit with operating a motor vehicle while intoxicated and reckless operation of a motor vehicle in violation of LSA-R.S. 14:98 and 14:99, respectively. On September 27, 1983, after being apprised of his right to be represented by an attorney, retained or appointed, *763 Landry executed a written waiver of that right. On January 6, 1984, Landry was tried before the Honorable J. Robert Hoepffner, Judge, First Parish Court, and found guilty as charged. Landry was immediately fined Three Hundred Dollars ($300) plus costs and sentenced to six months in jail. The jail term was suspended and Landry was placed on two years probation subject to special conditions.[1] Subsequent to sentencing, the State dismissed the reckless operation charge.
Landry thereafter retained counsel and on March 2, 1984, a Fifth Circuit Court panel granted his application for a writ of review.
It is from the above conviction and sentence that Landry seeks relief on review, asserting the following questions (assignments of error):
(1) Was the defendant entitled to a trial by jury?;
(2) Did the court err in failing to advise the defendant of his right to a trial by jury?;
(3) Did the defendant waive his right to a trial by jury?;
(4) Are Article I, Section 17 of the Louisiana Constitution of 1974 and Code of Criminal Procedure Article 493.1 unconstitutional?; and
(5) Was the defendant's conviction based upon evidence which viewed in a light most favorable to the state still failed to meet the prosecutor's burden of proof?
The central theme of assignments of error numbers 1 through 4 is that the defendant was entitled to a trial by jury and that Article I, § 17 of the Louisiana Constitution and LSA-C.Cr.P. Article 779, which requires that cases such as the present one be tried by court alone, are unconstitutional. In order to properly determine the merits of errors numbers 1 through 3, we must first decide error number 4. However, we do not find it necessary to directly pass upon error number 4, namely the constitutionality of LSA-Constitution Article I, Section 17 and LSA-C. Cr.P. Article 493.1 as applied to driving while intoxicated prosecution, since such articles are presumed constitutional and have indeed been held constitutional and defendant failed, in the trial court, to either raise the issue of their constitutionality or traverse the presumption they enjoy. LSA-R.S. 14:3; State v. Pickering, 432 So.2d 1067 (La.App. 3d Cir.1983); State v. Johnson, 458 So.2d 1301, (La.1984); State v. Hynes, 458 So.2d 1303 (La.1984). See also State v. Odell, 458 So.2d 1304 (La. 1984); State v. McCarroll, 337 So.2d 475 (La.1976); State v. Vieto, 453 So.2d 259 (La.App. 5th Cir.1984).
We now turn our attention to the question of whether or not defendant was entitled to a jury trial. However, in order to reach that question, we must first pass upon, as error patent, the sufficiency of the bills of information that defendant was charged by and their joinder.
Articles 464 and 384 of the Code of Criminal Procedure state that the information must be a plain, concise and definite written statement of the essential facts constituting the offense charged and that such written accusation of the crime be made and signed by the district attorney.
Defendant was charged in the First Parish Court, Parish of Jefferson, with two complaint-affidavits that were utilized as bills of information. A stamp, charging defendant and carrying the district attorney's signature, was placed on the back of each citation. While there may be some question as to the sufficiency of the district attorney's signature, we note that no objection as to the signature or adequate notice was ever raised prior to or at the time of trial.
Where the sufficiency of an indictment or information is not challenged either prior to or at trial, the pleading must be held sufficient unless it is so defective *764 that it does not, by any reasonable construction, set forth an identifiable offense against the laws of this state, and inform the defendant of the statutory bases of the offense. State v. Storms, 406 So.2d 135 (La.1981). Even where the prosecutor's signature has been omitted from an otherwise fully sufficient bill of information, apprising defendant of the nature and cause of the accusation against him, such error, in light of active prosecution, does not merit reversal. State v. White, 404 So.2d 1202 (La.1981).
Since there were no objections and the matter was actively prosecuted, we consider these stamped complaint-affidavits sufficient to apprise defendant of the charges against him and accordingly find them valid bills of information. LSA-Const. Art. 1, § 13. If there were any doubts concerning the authenticity of these prosecutorial instruments, those doubts were unquestionably removed by the district attorney's active prosecution of this case.
We have determined the prosecutorial instruments to be valid bills of information. Now, for resolution of whether defendant was entitled to a jury trial, we must consider the propriety of their joinder.
LSA-C.Cr.P. Article 493.1 provides that when two or more misdemeanors are joined in the same indictment or information limiting the maximum aggregate sentencing exposure, there is no corresponding right to trial by jury. However, where two or more misdemeanors have been informally joined in a "case", each representing a single bill of information, the maximum aggregate sentencing exposure is not limited and defendant would enjoy the right to a jury trial. State v. Johnson, supra; State v. Odell, supra.
We note that the stamped complaint-affidavits were filed simultaneously under a single docket number, presented as one information at arraignment and trial and were, at all pertinent times throughout this matter, considered and treated as one information by both the court and the district attorney. In light of the prior treatment of the complaint-affidavits, we find they were properly joined so as to constitute separate counts of a single bill of information, joined as per LSA-C.Cr.P. Articles 493 and 493.1; therefore limiting the defendant's sentencing exposure to six months and/or a Five Hundred Dollar ($500) fine. Accordingly, defendant was not entitled to a jury trial.
We now turn our attention to defendant's contention that the state failed to carry its burden of proof, beyond a reasonable doubt, that he was driving while intoxicated in violation of LSA-R.S. 14:98. Defendant argues that the circumstantial evidence offered by the state was insufficient to support a conviction of driving while intoxicated under the standards set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and LSA-R.S. 15:438.
The Jackson standard of review for sufficiency of the evidence, adopted by our courts in State v. Byrd, 385 So.2d 248 (La.1980), is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. See State v. Sutton, 436 So.2d 471 (La. 1983) and State v. Boelyn, 432 So.2d 260 (La. 1983).
LSA-R.S. 15:438 provides as follows:
The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.
The following passage from State v. Wright, 445 So.2d 1198, 1201 (La.1984) explains how Jackson and LSA-R.S. 15:438 apply to a case:
This Court has recognized that R.S. 15:438 is not a purely separate test from the Jackson standard to be applied instead of a sufficiency of the evidence test whenever circumstantial evidence forms the basis for the conviction. State v. Austin, 399 So.2d 158 (La.1981). Ultimately, all evidence, both direct and circumstantial, *765 must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden. R.S. 15:438 provides an evidentiary guideline for the jury when considering circumstantial evidence and facilitates appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. Exclusion of every reasonable hypothesis of innocence is therefore a component of the more comprehensive reasonable doubt standard, where circumstantial evidence is used to convict. As we stated in State v. Chism, 436 So.2d 464 (La.1983). La.R.S. 15:438 "may not establish a stricter standard of review than the more general reasonable juror's reasonable doubt formula, [but] it emphasises the need for careful observance of the usual standard, and provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence."
The defendant was convicted of operating a motor vehicle while intoxicated in violation of LSA-R.S. 14:98. The pertinent section of LSA-R.S. 14:98 as in effect at the time of the incident provided:
"A. The crime of operating a vehicle while intoxicated is the operating of any motor vehicle, aircraft, vessel or other means of conveyance while under the influence of alcoholic beverages, narcotic drugs, central nervous system stimulants, hallucinogenic drugs or barbiturates."
In order to convict an accused of driving while intoxicated, the state need only prove (1) that defendant was operating a vehicle or other conveyance; and (2) that defendant was under the influence of alcoholic beverages or some type of drug. State v. Fontenot, 408 So.2d 919 (La.1982).
Of course, the state also has the omnipresent burden of proving beyond a reasonable doubt that the offense occurred in the parish where the prosecution was held. La.Const. Art. 1, Section 16 (1974); LSA-C. Cr.P. art. 611; State v. Harvill, 403 So.2d 706 (La.1981); State v. Skipper, 387 So.2d 592 (La. 1980).
In the instant case, it is conceded by the defendant that he was operating a motor vehicle when stopped by Deputy Charles Bazile. The defendant contends that the state did not meet its burden of proving that (1) the defendant was operating his vehicle in Jefferson Parish; and that (2) the defendant was intoxicated while operating his vehicle.
The state apparently attempted to show that the offense occurred in Jefferson Parish by offering the testimony of Deputy Bazile. Deputy Bazile testified that, while on routine patrol, he observed the defendant in the 4200 block of Veterans Boulevard and stopped him in the 3800 block. Although Deputy Bazile did not identify that section of Veterans Boulevard as being within Jefferson Parish, the defendant testified he had just left the Triple Play Lounge, which we note to be at 4417 Veterans Boulevard. As Clearview Shopping Center is located at 4436 Veterans Boulevard and Lakeside Shopping Center is at 3301 Veterans Boulevard, we take judicial notice that the 3800 block of Veterans Boulevard is deep in the heart of Jefferson Parish. State v. Harvill, supra; State v. Skipper, supra.
On September 13, 1983, Deputy Bazile of the Jefferson Parish Sheriff's office was on routine patrol when he observed the defendant's vehicle swerving from the left to center lane and back again several times between the 4200 and 3800 blocks of Veterans Boulevard. After directing the defendant to pull his vehicle to the side of the road, Deputy Bazile determined that the possibility existed that the defendant was intoxicated. Deputy Bazile then twice asked the defendant to submit to a field sobriety test, explaining what the test encompassed and the possible consequences of refusing to take it. After the defendant repeatedly refused to submit to the test, Deputy Bazile placed him under arrest for *766 reckless operation and driving while intoxicated.[2]
Because the defendant refused to submit to field sobriety or breath analysis tests, the only evidence of intoxication offered by the state was the testimony of Deputy Bazile. Accordingly the perceived weakness in the prosecution's case is that there is no scientific evidence of intoxication.
However, when enacting LSA-R.S. 32:661 et seq., the legislature did not intend that this procedure be the exclusive evidence of intoxication. LSA-R.S. 32:662 C states:
The foregoing provisions of this section shall not be construed as limiting the introduction of any other competent evidence bearing upon the question of whether the person was under the influence of alcoholic beverages.
The Supreme Court has held that intoxication, with its attendant behavioral manifestations, is an observable condition about which a witness may testify. State v. Allen, 440 So.2d 1330 (La.1983); State v. Spence, 418 So.2d 583 (La.1982); State v. Badon, 401 So.2d 1178 (La.1981). However, the Supreme Court has not indicated what type of behavioral manifestations, independent of any scientific testing, will be sufficient evidence to support a charge of driving while intoxicated.[3]
Deputy Bazile offered the following testimony in regards to the events leading to the defendant's arrest:
Q. What were the circumstances that lead you to issue that citation? [D.W.I.]
A. Ahm ... I was on routine patrol, driving east bound on Veterans, when I observed Mr. Landry's car swerving from the left lane to the center lane. After maybe a block, I pulled him over and when I asked him for a drivers license, he became very uncooperative and arrogant towards me, and he, he appeared he wouldn't step away from his vehicle. He kept holding on to his door and leaning on his car, and I then attempted to give him a field sobriety test; which he completely refused and just became more arrogant. I then asked him, if he had been drinking at all and he said, yes he was. He was drinking at the Triple Play Lounge. So after several times of asking him to take the sobriety test, I then placed him under arrest for reckless operation and d.w.i.
Q. Approximately what part? [of Veterans Boulevard]
A. Ah ... it would be, when I first observed him, it was the fourty (sic) two hundred block and I finally, when I pulled him over, it was approximately the thirty eight hundred block.
A. Ok. You testified that you saw him going from lane to lane, for approximately what period of time? Did you observe him do that or what distance?
A. At least two or three street blocks. He was, it wasn't like he was doing it one time. It was several times.
Q. Ok. He refused to cooperate in any test?
A. Very much so. He also refused to give me his drivers license at first.
Q. Ok. Did ah ... despite his refusal to cooperate with the field sobriety test, were you able to observe his demeanor when you stopped him?
A. Yes sir.
Q. Ah ... how would he characterize his balance and the way he walked?
A. Well he was staggering several times and he kept wanting to lean on his car, when I tried to get him away from his car. He wouldn't, he refused and he, you know anything that I asked, he kept refusing it.

*767 Q. Did you have occasion to notice his speech?
A. Yes sir. His speech was definitely slurred. He wasn't talking in a normal since. (sic)
Q. Did you at any time observe the smell of alcoholic beverage on his breath?
A. Yes I did. When I first asked him to step out of his car and asked him for his drivers license.
Q. When you ah ... asked him to ah... complete ah ... a breath test, did you give him his rights in regard to that?
A. Yes, I did. I read it off the paper in the. (sic)
Q. How long have you been on the force?
A. Since August of eighty one.
Q. Have you had ah ... occasion prior to this to make arrest for d.w.i.?
A. Yes sir I have.
Q. You had occasion to observe the people who you arrested for d.w.i.?
A. Yes sir.
Q. Would Mr. Landry have been able to safely operate his vehicle on a road, after the point at which you stopped him?
A. I didn't feel he could. As my opinion as being a policeman, I feel he couldn't.
The defendant's wife testified on his behalf, stating that the defendant left their home at 10:00 p.m. on the night in question and was absent for approximately one hour when the police called and informed her of the defendant's arrest. She further testified that the defendant never drank at home, and, as far as she knew, had not been drinking at home that night before going out.
The defendant testified as follows: He went to the Triple Play Lounge to meet with a man to discuss a job. The meeting fell through and, on his way out, the defendant met a friend. The defendant had two drinks[4] with his friend and then headed home. He was stopped by the police and cooperated with them except when asked to take the breath test because "... I feared that having two drinks in a short period of time. I didn't know how the breath test, the breath test would register." Defendant denied that he was weaving from lane to lane.
There were marked similarities between the physical traits elicited by a field sobriety test and the physical traits exhibited by the defendant while under the observation of Deputy Bazile. Field sobriety tests gauge a subject's responses according to the performance of certain physical tasks: walking in a straight line; standing on one foot; touching a finger to the point of the nose, speaking distinctly in a coherent manner. The test was apparently developed to provide "objective" criteria on which an officer could base his belief that a subject was intoxicated. It should be noted that an officer's "subjective" opinion determines whether a suspect has passed the "objective" field sobriety test. Failure to pass a field sobriety test has long been held sufficient evidence to support a conviction of driving while intoxicated. State v. Allen, supra; State v. Badon, supra; State v. Cichirillo, 440 So.2d 934 (La.App. 2d Cir. 1983).
In the instant case, Officer Bazile's objective observations were that the defendant was staggering, leaning on his car for support, slurring his speech, and had the odor of alcohol. While the observations were not made during the course of a "subjective" field sobriety test, the same physical traits would have manifested themselves had the defendant attempted to perform the test. It is implausible to hold that, because the defendant refused to submit to a field sobriety test, his exhibition of the same physical traits which the field sobriety test was designed to uncover were insufficient to support a driving while intoxicated conviction. See also State v. Chestnut, 462 So.2d 674 (La.App. 4th Cir., 1984.)

*768 Error Patent

Do the provisions of LSA-C.Cr.P. Article 873 apply to misdemeanor convictions?
The defendant was tried, convicted and sentenced within a short period of time on January 6, 1983. The legislature has established minimum delay periods between conviction and sentence. The Louisiana Code of Criminal Procedure provides as follows:
Art. 873If a defendant is convicted of a felony, at least three days shall elapse between conviction and sentence. If a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately.
Official Revision Comment (e) states that the delay requirement is limited to felony cases, as the need for the mandatory delay in order to file motions to set aside the conviction is only of significance in felony cases.
In the instant case, it is certain that the defendant, after conviction of a misdemeanor, was not entitled to a three-day delay before sentencing. LSA-C.Cr.P. Article 873 states that a defendant convicted of a felony has the right to a three-day delay.
As defendant failed to file either a motion for a new trial or an arrest of judgment, we need not consider whether a 24hour delay is applicable in misdemeanor cases.
For the foregoing reasons, this conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The conditions were as set forth in LSA-R.S. 14:98 B (2), as in effect at the time of the offense.
[2] Upon arrival at police lockup, the defendant was asked to submit to a breath analysis test. Despite being warned again of the consequences, the defendant also refused to submit to this test.
[3] See State v. Gregory, 403 So.2d 1225 (La.1981); State v. Morrison, 392 So.2d 1037 (La. 1980). Although the Supreme Court reversed these DWI convictions, they did so due to the prejudicial effect of PEI results later thrown out. Accordingly, the Supreme Court did not pass on the sufficiency of the trooper's testimony.
[4] The defendant testified he was drinking V.O. and coke.