**Philip LANDRY, Petitioner-Appellant,**

v.

**Judge J. Robert HOEPFNER and William Guste, Jr., Attorney General, State of Louisiana, Respondents-Appellees.**

No. 85–3784.

United States Court of Appeals,
Fifth Circuit.

June 3, 1987.
Rehearing En Banc Granted
July 9, 1987.*

---

* See 822 F.2d 510.

Mark McTernan, McTernan, Parr & Rumage, New Orleans, La., for petitioner-appellant.

Elizabeth M. Gaudin, Asst. Dist. Atty., Research & Appeals, Dorothy A. Pendergast, Gretna, La., for respondents-appellees.

Before GARZA, WILLIAMS and GARWOOD, Circuit Judges. ·

GARZA, Circuit Judge:

In this habeas petition, Philip Landry seeks to challenge his 1984 conviction in the State of Louisiana for driving while intoxicated (DWI). He argues that he was denied his constitutional right to a trial by jury, that the trial judge failed to advise him of his right to trial by jury, and that Article I, Section 17 of the Louisiana Constitution and Article 779 of the Louisiana Code of Criminal Procedure are unconstitutional as applied to a defendant charged with DWI. Finding merit in his sixth amendment claim, we hold that the charge of DWI constitutes a "serious" offense under the United States Constitution and federal case law. Petitioner's conduct in driving on a public road in an intoxicated condition must be considered *malum in se*. Ad-

ditionally, the collateral consequences attendant upon conviction can be devasting to one's livelihood and reputation in the community. Therefore, a trial in front of a jury of his peers is mandated constitutionally, and we must reverse the conviction as violative of the sixth amendment as made applicable to the states through the fourteenth amendment.

While driving on a highway in Louisiana, Landry was stopped by a police officer who had observed that Landry's automobile kept swerving from lane to lane. The officer was suspicious that Landry was intoxicated, and asked him to take a field sobriety test. Landry refused to be tested. Consequently, he was arrested and charged with DWI and reckless driving. While at the police lockup, Landry was asked to submit to a breathalyzer test. Landry refused to be tested in this manner also. Landry later testified that he refused to be tested because he had consumed two alcoholic beverages, and that, although he was not drunk, he feared that the breathalyzer test would register positively.

At the bench trial, Landry acted in his own behalf, having waived his right to counsel. The First Parish Court for the Parish of Jefferson found Landry guilty of DWI pursuant to La.Rev.Stat.Ann. § 14:98 (West 1984). As a first offender, Landry was sentenced to pay a fine of $300 and to serve six months in the Jefferson Parish Correctional Center. The execution of incarceration was suspended, and Landry was placed on two years active probation subject to certain conditions. The reckless driving charge was dismissed upon Landry being found guilty of DWI.

On December 5, 1984, after having retained counsel, Landry argued before the Fifth Circuit Court of Appeals for the State of Louisiana that he was constitutionally entitled to a jury at the trial. That court disagreed and, subsequently, Landry petitioned for certiorari to the Supreme Court

of Louisiana. On March 15, 1985, Landry's writ application was denied without opinion. *State v. Landry*, 463 So.2d 761 (La. Ct.App. 5th Cir.), *writ denied*, 464 So.2d 1373 (La.1985).

On May 8, 1985, Landry filed a writ of habeas corpus with the United States District Court for the Eastern District of Louisiana. Once again, Landry asserted the unconstitutionality of the Louisiana statutes which provide for jury trials only if the penalty for an offense exceeds six months in jail and/or exceeds a $500 fine. The district court denied Landry's claim on the basis that DWI is not a "serious" offense. Landry's timely filing of appeal carries this constitutional question to our Court.

The essence of Landry's challenge is that the authority of *District of Columbia v. Colts*, 282 U.S. 63, 51 S.Ct. 52, 75 L.Ed. 177 (1930), mandates that a defendant charged in a Louisiana court with DWI is entitled to a trial by jury. Landry contemplates that the Sixth and Fourteenth Amendments to the United States Constitution guarantee a trial by jury in this case. The sixth amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed...." U.S. Const. Amend. VI. Article III guarantees that "[t]he Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed...." U.S. Const. art. III, § 2, cl. 3.

Clearly, the right to a trial by jury does not extend to every criminal proceeding. In a plurality opinion in *Baldwin v. New York*, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970), the Supreme Court established a bright-line threshold test for the right to a trial by jury. The *Baldwin* Court stated that only "serious" offenses require jury trials, while "petty" [1] offenses

---

**1.** By statute, a petty offense is classified as "[a]ny misdemeanor, the penalty for which, as set forth in the provision defining the offense, does not exceed imprisonment for a period of six months or a fine of not more than $5000 for

an individual and $10,000 for a person other than an individual, or both...." 18 U.S.C. § 1. In addition, because the penalty prescribed by the Louisiana legislature for DWI does not exceed imprisonment for a period of six months

can be tried to the bench. The Court determined that "no offense can be deemed 'petty' for purposes of the right to trial by jury where imprisonment for more than six months is authorized." *Id.* at 69, 90 S.Ct. at 1888. Moreover, "a possible six-month penalty is short enough to permit classification of the offense as 'petty'...." *Id.* Louisiana's maximum penalty for a first-time DWI offender is a fine of up to $500 and/or a sentence of not more than six months. La.Rev.Stat.Ann. § 14:98 (West 1984). It would seem to follow, therefore, that because the State's DWI statutory penalty prescribes a sentence of six months or less, *Baldwin* would dictate that a trial by jury is not a constitutional requirement. However, Landry relies on *Colts* and other cases to illustrate that the Supreme Court has recognized certain offenses which need not prescribe sentences in excess of six months in order to be considered "serious," and therefore require a jury determination.

In *Colts,* the defendant was charged with reckless operation of a motor vehicle in the District of Columbia. 282 U.S. at 70, 51 S.Ct. at 52. District of Columbia law provided for a jury trial if the possible fine exceeded $300 and/or imprisonment exceeded ninety days. The reckless driving statute in that jurisdiction prescribed a maximum penalty of thirty days imprisonment or a $100 fine. The Supreme Court reversed the trial court's denial of a trial by jury, holding that the offense of reckless driving was, by its nature, a "serious" crime. *Id.* at 73, 51 S.Ct. at 53. Accordingly, the defendant was constitutionally entitled to a trial by jury, notwithstanding the limited duration of possible incarceration:

> Whether a given offense is to be classed as a crime, so as to require a jury trial, or as a petty offense, triable summarily without a jury, depends primarily upon the nature of the offense. The offense here charged is not merely malum prohibitum, but in its very nature, is malum in se. It was an indictable offense at common law[.]

\* \* \* \* \* \*

An automobile is, potentially, a dangerous instrumentality, as the appalling number of fatalities brought about every day by its operation bear distressing witness. To drive such an instrumentality through the public streets of a city so recklessly "as to endanger property and individuals" is an act of such obvious depravity that to characterize it as a petty offense would be to shock the general moral sense. If the act of the respondent described in the information had culminated in the death of a human being, respondent would have been subject to indictment for some degree of felonious homicide. [citations omitted]. Such an act properly cannot be described otherwise than as a grave offense—a crime within the meaning of the third article of the Constitution—and as such within the constitutional guarantee of trial by jury.

*Id.* at 73–74, 51 S.Ct. at 53.

Landry contends that the offense of DWI is, by its nature, a *malum in se* or "serious" crime. He states that a DWI offender is subject not only to a jail term and a fine, but also to public opprobrium, serious economic repercussions, and possible suspension of his driver's license. Therefore, the bright-line rule enunciated in *Baldwin* is not apposite in this case due to the grave nature of the offense.

Contrary to Landry's assertions, the State claims that DWI has never been recognized by the Supreme Court or this Court as a "serious" crime requiring a jury trial. Article I, section 17, of the Louisiana Constitution provides for trial by jury in all cases in which the punishment may be confinement in prison for more than six months. La. Const. art. I, § 17. Louisiana Code of Criminal Procedure Article 779 states that a person charged with a misdemeanor in which the punishment may be a fine in excess of $500 or imprisonment for more than six months shall be tried by a

and/or a fine of $500, it falls within the definition of a "petty" offense as set forth in *Codispoti*

*v. Pennsylvania,* 418 U.S. 506, 512, 94 S.Ct. 2687, 2691, 41 L.Ed.2d 912 (1974).

jury of six persons, but that a person charged with any other misdemeanor shall be tried by the court without a jury. La. Code Crim.Proc.Ann. art. 779. The State argues that because a person convicted for the first time of driving while intoxicated may be fined not more than $500 and imprisoned for not more than six months, the charge was properly tried to the court without a jury under Louisiana Law.

In further support of its position the State relies upon *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). The *Duncan* Court stressed that the penalty authorized for a particular crime is of major relevance in determining whether it is "serious." *Id.* at 159, 88 S.Ct. at 1453. Further, the Court ruled that an offense imposing a penalty of up to six months imprisonment does not require a jury trial if it otherwise qualifies as a petty offense. *Id.*

However, "the boundaries of the petty offense category have always been ill-defined, if not ambulatory." *Id.* at 160, 88 S.Ct. at 1453. Moreover, the State apparently ignores the *Baldwin* Court's reaffirmation of *Colts.* Reviewing the nature of the right to a trial by jury, the Supreme Court stated:

> Decisions of this Court have looked to both the nature of the offense itself, *District of Columbia v. Colts,* 282 U.S. 63, 51 S.Ct. 52, 75 L.Ed. 177 (1930), as well as the maximum potential sentence, *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), in determining whether a particular offense was so serious as to require a jury trial. In this case, we decide only that a potential sentence in excess of six months' imprisonment is sufficiently severe by itself to take the offense out of the category of "petty."

*Baldwin,* 399 U.S. at 69, n. 6, 90 S.Ct. at 1888 n. 6. The *Baldwin* Court chose not to overrule *Colts,* but rather it considered the element of the nature of the offense relevant, as articulated in *Colts.* Recently, the Supreme Court reviewed a State of Wisconsin conviction which revoked a defendant's driver's license for sixty days because of his refusal to submit to a breathalyzer test. *Welsh v. Wisconsin,* 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984). Although the majority opinion relied upon the fourth amendment in vacating the conviction, a dissenting opinion stressed the dual considerations first articulated in *Colts* and *Baldwin:*

> Although the seriousness of the prescribed sanctions is a valuable objective indication of the general normative judgment of the seriousness of the offense, *Baldwin v. New York,* 399 U.S. 66, 68, 90 S.Ct. 1886, 1887, 26 L.Ed.2d 437 (1970) (plurality opinion), other evidence is available and should not be ignored. *United States v. Craner,* 652 F.2d 23, 24–27 (CA 9 1981); *United States v. Woods,* 450 F.Supp. 1335, 1340 (Md.1978); *Brady v. Blair,* 427 F.Supp. 5, 9 (SD Ohio 1976).

104 S.Ct. at 2104 (White, J., dissenting). Therefore, a strict adherence to the six month threshold does not control the disposition of this case, and we are required to make a judgment as to the seriousness of the offense of DWI.

Federal courts are in agreement that *Baldwin* did not hold that the maximum potential sentence is the sole criterion by which to determine if an offense is petty.[2]

---

**2.** Several state supreme courts have held that a person charged with DWI has a sixth amendment right to a jury trial. The Supreme Court of Arizona held that, although a crime with a maximum term of incarceration of six months normally would be considered a petty offense, the total penalty was "so harsh" as to take the crime out of the petty offense category. *Rothweiler v. Superior Court,* 100 Ariz. 37, 410 P.2d 479, 484 (1966) (en banc). Further, the court found that driving while intoxicated was a serious offense because the act was repugnant to the moral sense of the community. *Id.* The

Supreme Court of South Dakota held in *Parham v. Municipal Court,* 86 S.D. 531, 199 N.W.2d 501, 504–05 (1972), that driving while intoxicated was a "serious" offense. Thus, the defendant was entitled to a jury trial as provided in the sixth amendment. See *Lima v. Rambo,* 113 Ohio App. 158, 177 N.E.2d 554 (1960).

In *State v. O'Brien,* the Supreme Court of Hawaii held that a defendant accused of violating the state's DWI laws was constitutionally entitled to a trial by jury. 68 Haw. 39, 704 P.2d 883 (1985). That court also utilized an approach wherein the nature of the offense and

*Baldwin,* 399 U.S. at 69, 90 S.Ct. at 1888 n. 6; *District of Columbia v. Clawans,* 300 U.S. 617, 627, 57 S.Ct. 660, 663, 81 L.Ed. 843 (1937); *United States v. Craner,* 652 F.2d 23, 25 (9th Cir.1981); *United States v. Sanchez-Meza,* 547 F.2d 461, 464 (9th Cir. 1976); *United States v. Thomas,* 574 F.Supp. 197, 198 (D.D.C.1983); *United States v. Woods,* 450 F.Supp. 1335, 1340 (D.Md.1978); *Brady v. Blair,* 427 F.Supp. 5, 10 (S.D.Ohio 1976). Just as relevant in the determination is the factor of the nature of the offense. *Colts,* 282 U.S. at 73, 51 S.Ct. at 53. For instance, in *United States v. Craner,* 652 F.2d 23, 24 (9th Cir.1981), the defendant was convicted at a bench trial of DWI in Yosemite National Park. The offense carried a maximum penalty of six months imprisonment and/or a $500 fine. Craner was sentenced to probation with stipulated conditions. *Id.* On appeal, Craner contended that the district court erred in denying his motion for a trial by jury because DWI was a "serious" offense for which the Federal Constitution guaranteed a trial by jury. The Ninth Circuit agreed and reversed Craner's conviction. *Id.* at 27. The court held that although the sanctions of six months imprisonment or $500 in fines is generally the bright-line between "serious" and "petty" offenses, a conviction for DWI carried collateral consequences, such as suspension of one's driver's license. *Id.* at 25.

> The extent of possible punishment does not, however, alone determine whether an offense is serious or petty. Although Congress has established the sanctions of six months' imprisonment or $500 in fines as the bright line between serious and petty offenses, see 18 U.S.C. § 1(3),

the Supreme Court has not found "talismanic significance" in this formula when determining whether a constitutional right to a jury trial exists. *Id.* Therefore, under the authority of *Colts,* Craner was charged with a "serious" offense and his request for a jury trial should have been granted. *Id.*

A special concurrence in *Craner* merits consideration. One of the judges treated as pivotal the lack of considered legislative judgment in setting the penalty. That judge wrote that the severity of sentence is the primary indicator of the seriousness of a crime. *Id.* at 27–28. Moreover, if the offense was not indictable at common law or perceived as *malum in se,* a sub-*Baldwin* sentence created after considered legislative judgment does not cause jury trial rights to attach even if significant collateral consequences flow from the conviction. *Id.* We find that analysis faulty in the respect that it fails to give deference to the impact that such a conviction has on an individual's livelihood, it fails to consider the moral opprobrium associated with the offense of DWI, and it reads too restrictive of an interpretation of the Constitution of the United States.

■ Notwithstanding the considerations raised in the *Craner* special concurrence, many cases involving potential sentences of less than six months have been classified as offenses "serious" enough to require a trial by jury. These cases have utilized three tests to decide the appropriateness of a trial by jury. Justice Douglas, dissenting from the Court's opinion in *Cheff v. Schnackenberg,* approached the issue by inquiring into the character and gravity of

---

the magnitude of the potential penalty were of prime consideration. The court held that a DWI charge is viewed as a grave and serious offense in the public eye which must be tried to a jury. Moreover, "in the present day, the offense of driving while intoxicated is most akin to a charge of reckless driving, which was indictable at common law and which entitled the defendant to a jury trial." *Id.*

At least 24 states guarantee a DWI defendant the right to a jury trial for reasons related to the seriousness of the offense. See *United States v. Jenkins,* 780 F.2d 472 n. 4 (4th Cir.1986); *United States v. Craner,* 652 F.2d 23, 27 n. 5 (1981);

Annotation, Right to Trial by Jury in Criminal Prosecution for Driving While Intoxicated or Similar Offense, 16 A.L.R.3d 1373 (1967 and Supp.1986). A study of the authorities indicates that only six states deny defendants the right to a trial by jury on DWI charges. *Id.* It should be noted that, other than Louisiana, the states in this Circuit have utilized a jury where an accused is prosecuted for DWI. *Turner v. State,* 725 S.W.2d 409 (Tex.Ct.App. 1st Dist.1987); *Scarborough v. State,* 261 So.2d 475 (Miss.1972); *cert. denied,* 410 U.S. 946, 93 S.Ct. 1353, 35 L.Ed.2d 613 (1973).

the offense: "Was it an indictable offense at common law? Is it *malum in se* or *malum prohibitum?* What stigma attaches to those convicted of committing the offense?" 384 U.S. 373, 390, 86 S.Ct. 1523, 1529, 16 L.Ed.2d 629 (1966) (Douglas, J., dissenting). Our task is to decide whether the offense of DWI 1) was indictable at common law, 2) is considered a *malum in se* offense, and 3) carries with it significant collateral consequences sufficient to merit a jury trial. *See* 2 C. Wright, *Federal Practice and Procedure: Criminal,* § 371, at 295–96 n. 14 (1982 and Supp.1986).

Our research provides no authority for the proposition that DWI constituted an indictable offense at common law. In fact, some cases have concluded that DWI was not a crime indictable at common law. *See Woods,* 450 F.Supp. at 1345 (insufficient authority available to make the determination); *Rothweiler v. Superior Court,* 100 Ariz. 37, 410 P.2d 479 (1966) (not indictable at common law) (en banc). In *State v. Rodgers,* 91 N.J.L. 212, 214, 102 A. 433, 435 (1917), the New Jersey Court of Errors and Appeals not only held that DWI was not indictable at common law, it also held that a person charged with DWI did not have a right to trial by jury. Moreover, the Supreme Court in *Colts* made a favorable reference to *Rodgers* for the proposition that a jury trial can be dispensed with in cases charging petty offenses. *Colts,* 282 U.S. at 73, 51 S.Ct. at 53.

*Rodgers* is distinguishable from the present appeal. In *Rodgers,* the court treated the offense of DWI as charging the driver with no more than disorderly conduct. *Rodgers,* 102 A. at 434. Thus, the offense was not indictable at common law because it was merely characterized as disorderly conduct, and did not rise to the level of a public nuisance, which was indictable at common law. *Id.* at 435. As the district court did in *Woods* and the Ninth Circuit did in *Craner,* we find it proper to distinguish *Rodgers* from the present appeal on two grounds. First, the offense of disorderly conduct, as it was characterized in *Rodgers,* and the offense presented herein differ fundamentally in character. It is our opinion, and that of the *Craner* and

*Woods* courts, that the New Jersey court treated the offense as one of disorderly conduct rather than DWI. *Craner,* 652 F.2d at 26 n. 3; *Woods,* 450 F.Supp. at 1343. Second, as the *Woods* court pointed out, "this Court fundamentally disagrees with the rationale for decision in *Rodgers* and rejects it as entirely too rigid and narrow in its scope." *Woods,* 450 F.Supp. at 1343.

Returning to the *Colts* opinion, this Court believes that it is rather ironic that, even as the Supreme Court was citing *Rodgers* favorably, it was employing a method of analysis eschewed by the New Jersey court. The focus in *Colts* was solely on the "nature of the offense," i.e., whether it should be considered to be "petty" or a "serious" crime. Although the Court treated the common law background as a valid factor for consideration, the basis for the final decision was the reprehensible nature of the violation. The Court's holding in this regard is best summarized by its treatment of the offense as one which "in its very nature" was *"malum in se,"* as opposed to "merely *malum prohibitum."*

*Id.* at 1344.

In *Woods,* the defendant was charged and convicted of DWI on national park land. The maximum sentence consisted of a fine of not more than $500, imprisonment not to exceed six months, or both. *Id.* at 1336. Like the Ninth Circuit in *Craner,* the *Woods* court found a lack of considered legislative judgment as to the seriousness of the crime and the severity of the sentence. Thus, the court could not give much weight to the severity of the statutory penalty. *Id.* at 1345. However, in addition to focusing on the severity of the statutory penalty, the *Woods* court looked to the collateral consequences of a conviction for the offense. *Id.* at 1346. *See also Brady,* 427 F.Supp. at 10. Because the State of Maryland may revoke driving privileges of an individual convicted of DWI, the *Woods* court found that DWI is indeed a very serious crime. *Woods,* 450 F.Supp. at 1346–47. Further, the *Woods* court ad-

dressed the question whether DWI is a *malum in se* or *malum prohibitum* offense. Based on the precedents of *Colts* and *Rothweiler*, the court viewed DWI as a *malum in se* offense. *Id.* at 1348–49. *See also United States v. Barner*, 195 F.Supp. 103, 108 (N.D.Cal.1961) (DWI is "an innately reprehensible act, which every reasonable person would decry").

Likewise, the district court in *Brady* found DWI to be a serious offense, one in which the accused deserved a trial by jury by virtue of the Federal Constitution. 427 F.Supp. at 10. The *Brady* defendant, like the defendant herein, petitioned for habeas relief challenging his state conviction for DWI. Conviction under the municipal ordinance carried a maximum penalty of a $500 fine, six months incarceration and a mandatory three day sentence. Further, as in the present appeal, the accused's license was subject to suspension or revocation. The federal district court, in interpreting Ohio law, held:

> [C]onviction in Ohio on a charge of operating a motor vehicle under the influence of alcohol may have a substantial impact not only upon the defendant's liberty, but upon his financial resources, travel and occupation as well. Because of the consequences of conviction, the offense cannot be said to be petty from the perspective of either the convicted defendant or the public. The crime is a serious offense and one in which this petitioner had a federal constitutional right to trial by jury.

*Id.* Therefore, not only did the court consider the collateral consequences flowing from a DWI conviction, it also examined the degree of ethical condemnation with which the community viewed the offense. *Id.* at 9. *See Baldwin*, 399 U.S. at 69, n. 6, 90 S.Ct. at 1888 n. 6.

Having looked first at the maximum statutory penalty for the offense of DWI in Louisiana, we are bound to conclude that

DWI is classified as a petty offense according to Louisiana's statutory scheme. Yet, even though the penalty may reflect a considered legislative judgment, we are not persuaded that DWI should not be classified as a "serious" offense triable to a jury. The *Baldwin* court found the maximum authorized sentence a most relevant criteria, but not the sole determinative criteria. A study of authorities has indicated that other factors may be relevant in deciding whether DWI can be regarded as a "serious" offense sufficient to enlist the aid of a jury.

 Because insufficient resources exist to study whether DWI constituted an offense indictable at common law, that factor, as articulated by many courts, including the Supreme Court, cannot assist us in our decision. However, we find that factor immaterial in view of the foregoing. An inquiry into the gravity and nature of the offense has been undertaken. We hold, as many courts have held, that the offense of DWI is a "serious" crime as viewed by society and in terms of the impact on the accused, and, more importantly, as defined in the Federal Constitution. The offense is truly *malum in se*. Recent statistics indicate that nearly one of every two people in this country will be involved in an alcohol-related automobile collision. The loss of life, impairment of body and destruction of property present a devastating social problem in America today. The Supreme Court has stated recently that drunk driving is a major concern because of the unquestionable hazards presented to society. *Welsh*, 104 S.Ct. at 2100 n. 14. It is abundantly clear that the act of DWI is evil in itself. Because society and earlier decisions view this offense as *malum in se*, and thus "serious," we hold that to try the accused summarily violates his sixth amendment protection to an impartial jury.[3]

---

**3.** As we read Judge Garwood's dissenting opinion we question his perception of the offense of DWI. With approximately two million arrests each year in the United States, DWI ranks as one of the largest crime categories in the nation. Further, emerging organizations such as Mothers Against Drunk Driving (MADD) and Students Against Drunk Driving (SADD), mirror society's sensitive view of this offense. Public opinion on this subject is growing as MADD now claims 600,000 members and supporters, grouped into approximately 400 local chapters

We have also learned that it is appropriate for a court to examine the attendant collateral consequences in determining whether an offense is "serious." Like other courts, we find it important to gauge "the social and ethical judgments" of the people. Clearly, the collateral consequences which can be imposed upon the petitioner constitute additional penalties sufficient to require the assistance of a jury.

A person convicted in Louisiana for the first time of DWI is potentially subject to: 1) a six month jail term, 2) a fine of up to $500, 3) serious economic repercussions, such as an increase in insurance premiums, 4) public opprobrium, and 5) a sixty day suspension of his driver's license. La.Rev. Stat.Ann. § 32:414 (West 1984). Additionally, a first offender may be ordered, as Landry was, to attend driver's education classes, to attend a substance abuse clinic and to perform community service work.

While before the First Parish Court for the Parish of Jefferson, both Judge Hoepfner and Landry signed a document which read:

Furthermore, I fully understand that if a verdict of guilty is rendered by the Judge after trial, this may result in a substantial fine, and/or a jail sentence, and/or probation; or a suspension of my driving privilege, and/or my loss of employment or employability, and/or other effects on my private, social or public life.

It is apparent that these potential penalties, particularly the suspension of driving privileges, constitute significant collateral consequences. As the Ninth Circuit reasoned, "the threat of loss of a license as important as a driver's license, a deprivation added to penal sanctions, is another sign that the [DWI] defendant's community does not view [DWI] as a petty offense." *Craner*, 652 F.2d at 26. Two members of the Supreme Court also have considered collateral consequences important in gauging the seriousness of a crime. *Welsh*, 104 S.Ct. at 2104 (White, J., dissenting). Louisiana has the power to suspend one's license upon conviction for DWI. We hold that this constitutes a significant collateral consequence, and therefore a trial by jury is necessitated.

The final question which needs to be addressed is whether petitioner waived his

---

nationally. MADD Update: 1987 Targets, Drunk Driving Law Reporter, Mar. 1987, at 12. Therefore, we cannot comprehend the dissent's suggestion that "there is more public opprobrium attached to public drunkenness or disorderly conduct than there is to first offense DWI."

In addition, we must comment on the dissent's protrayal of *United States v. Jenkins*, 780 F.2d 472 (4th Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 2283, 90 L.Ed.2d 724 (1986), and examine its reasoning as it pertains to this litigation. Because the Supreme Court determined that only defendants accused of "serious" crimes are given an absolute right to trial by jury, it adopted a bright-line test for determining whether a crime is "serious." The *Baldwin* Court only held that an offense carrying a maximum penalty in excess of six months' imprisonment is sufficiently severe to be automatically categorized as "serious." The Court has made no *per se* rule regarding penalties prescribed for offenses of less than six months. The Supreme Court also held that, although a lower court should consider the intrinsic nature of the offense itself, the most relevant indication of the seriousness of an offense is the severity of the maximum authorized penalty.

The Louisiana statute recites that the offense of DWI is punishable by a fine of up to $500.00 and/or six months in jail. If the legislature had prescribed a penalty of six months and a day in jail, Landry automatically would be entitled to a jury trial. However, that is not the case here. We only point out this fact to distinguish this case from *Jenkins*. In *Jenkins*, the maximum penalty for a first offense DWI was thirty days in jail and a $200.00 fine. Significantly, the potential length of sentence in the present appeal, although not exceeding the *Baldwin* threshold, still is six times as severe as that in *Jenkins*. The Fourth Circuit even stated:

The potential sentence of thirty days imprisonment and a $200.00 fine, the most important factor to be considered, is extremely lenient, thereby indicating a societal view that a D.U.I. first offense is not "serious." The other factors [collateral consequences, national public mood] are not sufficiently compelling to outweigh the clear implication arising from the mild maximum penalty.

*Jenkins*, 780 F.2d at 475. Had the Fourth Circuit confronted this issue with state law prescribing a maximum penalty of six months incarceration, we believe the court would have had a closer call. However, this is only conjecture. We find that the maximum authorized penalties between the two cases are substantially different, and for that reason we feel compelled to distinguish this appeal from *Jenkins*.

right to a trial by jury. The Fifth Circuit Court of Appeals for the State of Louisiana held that petitioner's failure to raise his sixth amendment right to a jury trial prior to trial constituted a waiver of that right. *Landry,* 463 So.2d at 764. The state appellate court ruled that, even though he was neither represented by counsel nor advised of his right to a trial by jury, petitioner voluntarily, knowingly and intelligently waived his right. *Id.*

Petitioner contends that his uncounseled, uninformed failure to raise the question at his arraignment and trial cannot suffice as a waiver of his right to challenge the conviction. Petitioner's primary reference of authority is *State v. McCarroll,* 337 So.2d 475 (La.1976), which petitioner offers is directly on point. The State completely failed to address this issue in its brief.

The state appellate court did not discuss the reasoning of *McCarroll* in its opinion. In *McCarroll,* the defendants argued that because each of their cumulated sentences exceeded six months confinement, they were entitled to a jury trial. Further, because they were not apprised of their right to a jury trial, a guilty plea did not constitute a valid waiver of that right. *McCarroll* is analogous to the present appeal. In both cases, the trial court failed to advise them of their sixth amendment right to a jury trial because of the court's reliance on existing law. Existing law in both cases at the time of arraignment and trial held that jury trial rights did not attach. The accused in both cases, nonetheless, pursued the matter on appeal even though it was not raised at the trial level. The Louisiana Supreme Court reversed and remanded the *McCarroll* convictions, reasoning that a change in the law had precipitated a jury trial and that the defendants' failure to raise the issue at trial did not constitute a waiver of the right. *Id.* at 479.

Although the right to a jury trial may be waived in a non-capital case, Art. I, § 17 requires that the waiver be "knowingly and intelligently" made. Therefore, we must indulge every reasonable presumption against waiver of this fundamental right. *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019 [1023], 82 L.Ed. 1461 (1938); *Carnley v. Cochran,* 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962). The record in this case reveals that defendants were not informed of their right to a jury trial at the time of the arraignment nor at any other time. Indeed, according to our latest expressions on the subject at the time of the guilty plea and the trial herein, it was not apparent to the trial judge or counsel that defendants were entitled to a jury trial in this case. [citations omitted]. Under the circumstances of this case, therefore, we find that there was no "knowing and intelligent" waiver of the right to a jury trial by any of the defendants.

*Id.* We find *McCarroll* on point with the present appeal, and therefore hold that petitioner did not knowingly and intelligently waive his constitutional right to a trial by jury.

 There must be an express and affirmative waiver of a jury trial by the accused. Merely failing to request a jury and mere acquiescence in proceeding without a jury is not sufficient. 2 C. Wright, *Federal Practice and Procedure: Criminal* § 372, at 300–01 (1982 and Supp.1986). The trial transcript is devoid of any discussion between the court and petitioner concerning his express and intelligent waiver of a jury trial as established in *Patton v. United States,* 281 U.S. 276, 312, 50 S.Ct. 253, 263, 74 L.Ed. 854 (1930). *See also McCranie v. United States,* 333 F.2d 307, 307 (5th Cir.1964). Petitioner cannot be justly deemed to have waived his fundamental constitutional right to a jury trial.

Accordingly, Article I, Section 17 of the Louisiana Constitution of 1974 and Louisiana Code of Criminal Procedure, Article 779, are unconstitutional in a DWI case insofar as they deny petitioner the fundamental constitutional right to a trial by jury.

The Great Writ is thereby GRANTED to petitioner. His conviction is set aside, and

the DWI charge against petitioner is remanded to the State of Louisiana for further proceedings in accordance with this opinion.

GARWOOD, Circuit Judge, dissenting:

I respectfully dissent.

So far as I am able to discern, the majority opinion is the first by an appellate court to squarely hold that the Sixth Amendment requires a jury trial for the offense of driving while intoxicated (DWI) even though the maximum possible punishment does not exceed that for petty offenses and is substantially less than the legislature might have imposed.[1] This holding, it seems to me, amounts to an invasion of the legislative prerogative to determine the seriousness of offenses not indictable at common law by the extent of the penalty provided, and unnecessarily imposes a national uniformity in this respect which is fundamentally at odds with the federal nature of our Constitution. Under this approach, the "seriousness" of offenses becomes a matter for essentially subjective judicial judgment, binding throughout the entire nation. The implication of the majority opinion is that because alcohol-related driving accidents have become a major national problem, therefore DWI is a serious, and not a petty, offense for Sixth Amendment purposes, notwithstanding that the Louisiana legislature may have differently evaluated the problem in Louisiana or, more to the point, its relationship to the level of seriousness appropriate to the Louisiana DWI offense. Moreover, I believe the majority opinion misapprehends the relevant jurisprudence in the states and runs counter both to the Supreme Court's general approach respecting the classification of offenses for this purpose and to its repeated recognition that DWI is a petty offense where its maximum potential penalty does not exceed six months' confinement and a $500 fine.

Unquestionably, "[t]he most relevant indication of the seriousness of an offense is the severity of the penalty authorized for its commission." *Frank v. United States*, 395 U.S. 147, 89 S.Ct. 1503, 1505, 23 L.Ed.2d 162 (1969). *See also Baldwin v. New York*, 399 U.S. 66, 90 S.Ct. 1886, 1888, 26 L.Ed.2d 437 (1970) ("the most relevant such criteria is the severity of the maximum authorized penalty"). Time and time again the Supreme Court has looked to Congress' definition of petty offenses in 18 U.S.C. § 1(3) for this purpose. *See Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 1453–54, 20 L.Ed.2d 1491 (1968); *Baldwin*, 90 S.Ct. at 1889. More recently, the Court has spoken exclusively in terms of the penalty. Thus, in *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 2008, 32 L.Ed.2d 530 (1972), the Court observed:

> "The right to trial by jury, also guaranteed by the Sixth Amendment by reason of the Fourteenth, was limited by Duncan v. Louisiana, *supra*, to trials

---

1. In *United States v. Craner*, 652 F.2d 23 (9th Cir.1981), the holding that DWI committed in a national park was not a "petty" offense, although the maximum possible punishment did not exceed six months' imprisonment and a $500 fine, was expressly based in part on the fact that the Secretary of the Interior, who set the maximum penalty, fixed it at the highest level authorized. The *Craner* majority observed that "[w]e cannot hazard that the Secretary's indiscriminate authorization of this penalty for varied offenses, or Congress's general limitation on the sentences the Secretary may authorize, represents a considered legislative judgment of the gravity of the offense of DUI." *Id.* at 25. Judge Sneed in his *Craner* special concurrence would have relied exclusively on this ground; absent that special factor, he was "inclined to treat the DUI offense as 'petty.'" *Id.* at 28. Here, by contrast, the maximum penalty fixed by the Louisiana legislature *does*, of course, represent its "considered legislative judgment of the gravity of the offense."

*United States v. Woods*, 450 F.Supp. 1335 (D.Md.1978), is, like *Craner*, a DWI in violation of a national park regulation, and thus is distinguishable for the same reasons. 450 F.Supp. at 1345. Additionally, the *Woods* court relied on the law of Maryland, the state of defendant's residence and apparently that in which the park was located, which provided penalties of up to one year's confinement for first offense DWI, and for prosecution of which a jury would have been required under *Baldwin v. New York*, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970). 450 F.Supp. at 1345. No such special circumstances are applicable here. *Brady v. Blair*, 427 F.Supp. 5 (S.D.Ohio 1976), does support the majority, but in my view it is simply wrong.

where the potential punishment was for six months or more." [2]

Similarly, in *Codispoti v. Pennsylvania*, 418 U.S. 506, 94 S.Ct. 2687, 2691, 41 L.Ed.2d 912 (1974), the Court, referring to *Duncan* and *Bloom v. Illinois*, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), stated:

"Since that time, our decisions have established a fixed dividing line between petty and serious offenses: those crimes carrying a sentence of more than six months are serious crimes and those carrying a sentence of six months or less are petty crimes."

In the ten to fifteen years since *Argersinger* and *Codispoti*, no opinion of the Supreme Court has retreated from the above-quoted language of those decisions giving controlling significance to the maximum authorized punishment.[3] At the very least, this suggests that some extremely compelling reason or precedent must be advanced to support a holding that an offense whose maximum possible punishment is concededly "petty" under *Baldwin* is nevertheless not a petty offense for purposes of entitlement to trial by jury under the Sixth Amendment.

Decisions of the Supreme Court prior to *Duncan* were not as clear in their emphasis on the possible maximum penalty as the crucial factor in determining whether a jury trial was constitutionally required. These decisions were each grounded in the proposition that the meaning of the right to trial by jury, under Article 3, Section 2, clause 3 and the Sixth Amendment of the Constitution, was to be derived essentially from the common law. Thus, in *Callan v. Wilson*, 127 U.S. 540, 8 S.Ct. 1301, 32 L.Ed. 223 (1888), the Court noted that the Constitution's jury trial provision "is to be interpreted in the light of the principles which, at common law, determined whether the accused, in a given class of cases, was entitled to be tried by a jury." *Id.*, 8 S.Ct. at 1303. *Callan* concerned a conspiracy prosecution, and the Court proceeded to review in detail the authorities reflecting that that crime was an indictable offense at common law; hence a jury was required even though the case was tried in municipal court. *Id.* at 1306–07.[4] In *Schick v. United States*, 195 U.S. 65, 24 S.Ct. 826, 49 L.Ed. 99 (1904), the Court, in holding that a petty offense did not require trial by jury, relied on *Callan* and again emphasized that the constitutional provisions in this respect "must be read in the light of the common law." *Id.*, 24 S.Ct. at 827. The issue was next considered in *District of Columbia v. Colts*, 282 U.S. 63, 51 S.Ct. 52, 75 L.Ed. 177 (1930), which held that the accused, charged with a crime which "was an indictable offense at common law," was entitled to a jury although the maximum punishment did not exceed thirty days in jail and a $100 fine. *Id.*, 51 S.Ct. at 53. Again, the Court stressed that in this respect the Constitution's jury trial "provision is to be interpreted in the light of the common law." *Id.*

The last of the Court's presently significant pre-*Duncan* decisions is *District of Columbia v. Clawans*, 300 U.S. 617, 57 S.Ct. 660, 81 L.Ed. 843 (1937). There the defendant was charged with selling second-

---

**2.** The *Argersinger* Court went on to say:

"We reject ... the premise that since prosecutions for crimes punishable by imprisonment for less than six months may be tried without a jury, they may also be tried without a lawyer." *Id.*, 92 S.Ct. at 2009.

**3.** In *Muniz v. Hoffman*, 422 U.S. 454, 95 S.Ct. 2178, 45 L.Ed.2d 319 (1975), the Court held that a $10,000 contempt fine of a labor union did not make the offense serious, as opposed to petty, rejecting the contention "that a contempt must be considered a serious crime under all circumstances where the punishment is a fine of more than $500, unaccompanied by imprisonment." *Id.* 95 S.Ct. at 2190–91. *Muniz* suggests, as does the quoted language of *Argersinger* and *Codispoti*, that the focus of the petty offense test is on the maximum authorized confinement.

**4.** *Callan* quoted an early Massachusetts decision to the effect that, under "'[t]he general rule of the common law,'" conspiracy "'is a criminal and indictable offense,'" and, after reviewing other decisions and texts also indicating the seriousness with which the common law viewed conspiracy, observed, "These authorities are sufficient to show the nature of the crime of conspiracy at common law." 8 S.Ct. at 1306, 1307. *Callan* then proceeded to hold that accordingly conspiracy could not be regarded as a "petty" offense, and hence a jury was required.

hand property without the required license, an offense punishable by ninety days' imprisonment. Noting that the offense "was not indictable at common law," *Clawans* nevertheless considered whether "the severity of the penalty" might be "sufficient to bring it within the class of major offenses, for the trial of which a jury may be demanded." *Id.*, 57 S.Ct. at 662. The Court observed that at the time of the American Revolution there were petty offenses, triable without a jury "under English statutes, which carried possible sentences of imprisonment for periods from three to twelve months," and that of the statutes in that time of the "Colonies" or the "newly-created states" some sixteen authorized imprisonment for three months or more, and eight others for as much as six months, without a jury trial. *Id.* at 662–63. Obviously concerned with the prospect of imprisonment for as long as nine months or a year, or possibly more, being imposed without the safeguard of a jury's availability, the Court remarked that "commonly accepted views of the severity of punishment by imprisonment may become so modified that a penalty once thought to be mild may come to be regarded as so harsh as to call for the jury trial, which the Constitution prescribes, in some cases which were triable without a jury when the Constitution was adopted." *Id.* at 663. Then, in words that presaged *Baldwin* and its progeny, *Clawans* continued:

> "But we may doubt whether summary trial with punishment of more than six months' imprisonment, prescribed by some pre-Revolutionary statutes, is admissible, without concluding that a penalty of ninety days is too much." *Id.* at 663 (footnote omitted).[5]

Within that framework, however, the maximum permissible penalty for this purpose is not to be resolved "subjectively" but rather "by objective standards," principally the greatest penalties which Congress and at least some of the states allow to be imposed without entitlement to trial by jury. *Id.* at 663–64. It is to be noted that this analysis was *not* a head counting exercise to determine the consensus practice around the nation, but rather simply reflected statutes or decisions or both in thirteen different states. *Id.* at 663 n. 6, 664 n. 7. When this issue was revisited in *Baldwin*, Justice White's opinion referred to the federal standard of six months and a $500 fine, and observed that "[i]n the entire Nation, New York *City alone* denies an accused the right to interpose between himself and a possible prison term of over six months, the commonsense judgment of a jury of his peers." 90 S.Ct. at 1889–90 (footnote omitted; emphasis added).[6]

It seems clear then that the Court originally followed strictly common law precedent, but not without some developing concern that this might allow severe penalties without the protection of a jury. This possibility—and doubtless the related danger posed by burgeoning statutory offenses without common law antecedents—in effect opened the prospect of a potentially troublesome gap in the protection which the Constitution's jury trial provisions were intended to afford. Ultimately, the Court chose to close that gap by employing *Baldwin*'s objective, bright-line test grounded in the historical practice of the colonies and the original states.

This is not to suggest that the Court has to any extent overruled *Callan* or *Colts, sub silentio.* The point, rather, is that the Court has *never* held that an offense, not indictable at common law, nevertheless

---

5. The Court's mention here of "pre-Revolutionary statutes" authorizing summary trial for offenses with *more* than six months' imprisonment was footnoted to refer to the *English* statutes, some of which had penalties as long as a year. *Id.* at 662 n. 2, 663 n. 5. No reference was made in this connection to the early state or colonial statues which the opinion had not described as authorizing *more* than six months in nonjury cases. *Id.* at 662–63 nn. 3 & 4.

6. *Baldwin* likewise noted that "with a few exceptions, crimes triable without a jury in the American States since the late 18th century were also generally punishable by no more than a six-month prison term." *Id.* at 1889. And, *Baldwin* again emphasized the search for "objective criteria," observing that "the most relevant such criteria" is "the severity of the maximum authorized penalty." *Id.* at 1888.

must be tried by a jury notwithstanding that the maximum authorized penalty does not exceed that generally recognized for petty offenses. *Frank* and *Baldwin*, and their progeny, strongly counsel against an expansive reading of *Callan* and *Colts* which divorces those decisions from their common law grounding. Respecting any given offense not indictable at common law, once the legislature has determined that it is not serious, by fixing a concededly "petty" maximum penalty under the bright-line rule of *Baldwin*, there is simply no good reason, in history, precedent, or policy, for the federal judiciary to second-guess that determination by engaging in its own essentially subjective evaluation of the seriousness of that particular offense and of community attitudes toward it. More-over, the application of the Sixth Amend-ment's jury trial requirement to the states has rendered any such attempt even more dubious.[7] Though the states may not try without a jury what was indictable at com-mon law, nor transgress *Baldwin*, surely a state legislature has the power to deter-mine that a given type problem has a dif-ferent dimension in its state than in others, or to evaluate differently from other states the seriousness of even an essentially sim-ilar problem, or to arrive at its own conclu-sions concerning how serious an offense

under that state's law should be made in light of the problem as it manifests itself there.[8]

Turning now to the specific offenses of DWI, the majority concedes the absence of "authority for the proposition that DWI constituted an indictable offense at com-mon law." Indeed, the authorities hold that it was not such an offense. *State v. Rodgers*, 91 N.J.L. 212, 102 A. 433 (1917); *Whirley v. State*, 450 So.2d 836, 838 (Fla. 1984); *State ex rel. Sellers v. Parker*, 87 Fla. 181, 100 So. 260 (1924); *State v. Mor-rill*, 123 N.H. 707, 465 A.2d 882, 885 (1983); *Rothweiler v. Superior Court*, 100 Ariz. 37, 410 P.2d 479, 16 A.L.R.3d 1362, 1368 (1966) ("the offense of driving while under the influence of intoxicating liquor was not a common law offense").

Whether DWI in particular is such an offense as constitutionally requires a jury trial despite carrying only a "petty" maxi-mum penalty has also been indirectly ad-dressed on two occasions by the Supreme Court. In *Colts*, the Court considered a charge of driving over the speed limit and recklessly so as to endanger others. The statute prohibited, in separate clauses, speeding, reckless driving, and driving so as to endanger persons or property. Al-

7. I observe that since *Duncan* the Court has authorized less than twelve-person juries, and less than unanimous verdicts, in criminal cases, despite the long-standing traditions to the con-trary under the Sixth Amendment and Article 3, Section 2, clause 3, as they had previously al-ways been understood. *Williams v. Florida*, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970); *Apodaca v. Oregon*, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972). One cannot but suppose that the specter of diminished state flexibility posed by *Duncan* likely had substantial influ-ence on these results. Further, Justice Powell, whose concurrence was necessary to the affirm-ance in *Apodaca*, rejected the principle that the requirements of the Sixth Amendment, as ap-plied to the federal government, were the same as those applied to the states through the Four-teenth Amendment. *Id.*, 92 S.Ct. at 1635, 1637. Similarly, in *Ludwig v. Massachusetts*, 427 U.S. 618, 96 S.Ct. 2781, 49 L.Ed.2d 732 (1976), four justices voted to reverse on the basis that *Cal-lan*'s Sixth Amendment trial *de novo* rule was applicable to the states and had been violated; Justice Powell provided the crucial vote for af-firmance on the basis that this aspect of *Callan*

did not apply to the states. *Ludwig*, 96 S.Ct. at 2789 ("[T]he right to a jury trial afforded by the Fourteenth Amendment is not identical to that guaranteed by the Sixth Amendment."). Al-though Justice Powell's view in this respect is clearly a minority one on the Court, it has been decisive on at least those two occasions and doubtless is the reason that the juries required in federal criminal cases must still be of twelve persons and reach unanimous verdicts.

8. I do not find it necessary to speculate whether there might conceivably be some offense of such unquestionable and particularly aggrava-ted moral heinousness—reflecting a moral de-pravity equivalent to, say, that of murder or rape—that it would require a jury trial notwith-standing the absence of any indictable common law antecedent and a legislatively fixed maxi-mum sentence not exceeding the *Baldwin* threshold. Of course, the chances of a legisla-ture fixing that kind of penalty for such an offense are slim to none. In any event, it is abundantly clear—as reflected subsequently in this opinion—that DWI does not even remotely approach that level of moral heinousness.

though the maximum imprisonment was only thirty days, the Court held a jury was required. It stressed that the accused was "not charged merely with ... exceeding the ... limit of speed ... or merely with driving recklessly ... but with ... having driven at the forbidden rate of speed and recklessly, 'so as to endanger property and individuals.' " 51 S.Ct. at 53. Again, the Court made clear that the charge was not merely reckless driving, but rather driving *"so* recklessly 'as to endanger property and individuals.' " *Id.* (emphasis added). This, it was held, "was an indictable offense at common law" for which a jury was required. *Id. Colts* cited *State v. Rodgers* for the proposition that in petty offenses a jury was not required, and then went on to particularly rely on that case, stating:

> "The New Jersey Court of Errors and Appeals, in State v. Rodgers, supra, has discussed the distinction between traffic offenses of a petty character, subject to summary proceedings without indictment and trial by jury, and those of a serious character, amounting to public nuisances indictable at common law; and its examination of the subject makes clear that the offense now under review is of the latter character." 51 S.Ct. at 53.

It thus behoves us to see what *State v. Rodgers* had to say on the subject. There it was held that DWI, which carried a six-month maximum sentence, was not a public nuisance or otherwise an offense indictable at common law, and that accordingly there was no entitlement to trial by jury. Clearly *Colts* gave its approval to the holding of *State v. Rodgers* that DWI was, as *Colts* characterized it, one of those "traffic offenses of a petty character subject to summary proceedings without indictment and trial by jury." 51 S.Ct. at 53. Further, what the New Jersey Supreme Court in *State v. Rodgers* said of DWI is as true

today of the Louisiana offense as it was in 1917 of the New Jersey offense, namely, "that it is not essential to the existence of the statutory offense that the driver ... be so intoxicated that he cannot safely drive," that it suffices that as a result of alcohol consumption the driver is under "an abnormal mental or physical condition ... which tends to deprive him of that clearness of intellect and control of himself which he would otherwise possess," and that conviction is possible "even though he drives so slowly and so skillfully and carefully that the public is not annoyed or endangered." *State v. Rodgers*, 102 A. at 435.[9]

Also relevant in this connection is (then) Justice Stone's opinion for the Court in *Clawans* where, in upholding nonjury conviction for an offense punishable by three months' imprisonment he relied on the fact that:

> "A number of states have continued in force statutes providing for trial, without a jury, of violations of municipal ordinances, and sundry statutory offenses, punishable by commitment for three months or more." 57 S.Ct. at 663 (footnote omitted).

The first specific offense statute (as opposed to statutes embracing violations of municipal ordinances generally) cited by Justice Stone in support of the above-quoted statement is:

> "N.J.Comp.Laws (1924 Supp.), §§ 135–63(3), 135–76 (operating motor vehicle under influence of liquor; six months; see Klinges v. Court of Common Pleas, 130 A. 601, 3 N.J.Misc. 1084, 4 N.J.Misc. 7)." 57 S.Ct. at 663 n. 6.

The cited *Klinges* case holds that the New Jersey DWI statute, which authorizes confinement of up to six months, is not unconstitutional because a jury trial is not authorized. 3 N.J.Misc. 1084, 4 N.J.Misc. 7, 130

---

**9.** Of course, one can say that driving while intoxicated should be considered serious because of its significant *potential* to endanger others, even though in a particular instance—such as driving slowly on a straight rural road void for miles in all directions of traffic and pedestrians—it may not do so. But, as *Colts* plainly infers, the same thing can be said of reckless driving *simpliciter* or speeding without those

offenses being thereby necessarily made nonpetty.

I also observe that one can be guilty of DWI even though he did not intend to become under the influence or realize that he was. Further, DWI is not generally considered an offense of moral turpitude. *See Compton v. Jay*, 389 S.W.2d 639 (Tex.1965).

A. 601, 602 (1925).[10] In the *Clawans* text, Justice Stone continued by stating, "Convictions under such legislation have been upheld many times in the state courts, despite objections to the denial of a jury trial." 57 S.Ct. at 664 (footnote omitted). Among the cases cited by Justice Stone in support of this statement is *State v. Parker*, 87 Fla. 181, 100 So. 260 (1924), a DWI prosecution. *See* 57 S.Ct. at 664 n. 7. Surely, then, *Clawans* is another example of the Supreme Court's recognition that DWI may constitutionally be prosecuted without a jury where the maximum penalty does not exceed that applicable to petty offenses generally. The Nebraska Supreme Court, among others, has read *Clawans* as categorizing DWI as a petty offense. *State v. Amick*, 173 Neb. 770, 114 N.W.2d 893, 895 (1962). *See also City of Albuquerque v. Arias*, 64 N.M. 337, 328 P.2d 593, 594 (1958) (same).[11]

Finally, it may be noted that the only other circuit court opinion directly addressing this question has unanimously held that the Sixth Amendment does not require a jury in DWI prosecutions where the maximum penalty is less than the *Baldwin* standard. *United States v. Jenkins*, 780 F.2d 472 (4th Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 2283, 90 L.Ed.2d 724 (1986). Federal district court decisions holding that DWI does not require a jury trial where the maximum punishment does not exceed the *Baldwin* standard include *United States v. Fletcher*, 505 F.Supp. 1053 (W.D. Va.1981), and *Matos v. Rodriguez*, 440

F.Supp. 673 (D.Puerto Rico 1976). The same holding was made by the district courts in *Craner, Jenkins*, and in this case.

The majority contends that "[r]ecent statistics indicate that nearly one of every two people in this country will be involved in an alcohol-related automobile collision. The loss of life, impairment of body and destruction of property present a devastating social problem in America today." I am not inclined to disagree.[12] But the problem *in Louisiana* may not be, or may not appear to *its* legislature to be, so serious. Or, the Louisiana legislature may feel that in any event the problem is not best addressed in Louisiana by making DWI a serious, as opposed to a petty, offense under Louisiana law. Moreover, how can we with confidence gauge the public opprobrium which attaches to DWI in Louisiana, or elsewhere, or be confident that it exceeds that for, say, public drunkenness? *Compare Compton v. Jay*, 389 S.W.2d 639 (Tex. 1965) (DWI not an offense of moral turpitude). Surely those are decisions for Louisiana to make. It is surprising that the majority considers that *Welsh v. Wisconsin*, 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984), supports its position in this respect. To the contrary, in *Welsh*, the Court stated:

"Nor do we mean to suggest that the prevention of drunken driving is not properly of major concern to the States. The State of Wisconsin, however, along with several other States, ... has chosen to limit severely the penalties that may

---

**10.** New Jersey still follows this rule. *See, e.g., State v. Roth*, 154 N.J.Super. 363, 381 A.2d 406, 408 (1977).

**11.** While not authoritative under the circumstances, it may also be noted that the Supreme Court has declined to review state decisions holding that DWI is not an intrinsically serious offense for which a jury trial is required, where the maximum permissible punishment does not exceed that for "petty" offenses. *See City of Monroe v. Wilhite*, 255 La. 838, 233 So.2d 535 (1970), *cert. denied*, 400 U.S. 910, 91 S.Ct. 136, 27 L.Ed.2d 150 (1970); *City of Gainesville v. Hilliard*, 207 So.2d 520 (Fla.App.), *approved*, 213 So.2d 689 (Fla.1968), *appeal dism'd for want of a substantial federal question*, 393 U.S. 321, 89 S.Ct. 556, 20 L.Ed.2d 1308 (1969) (per curiam). *Hilliard*'s force, however, is undermined by the

fact that it was tried prior to the decision in *Duncan*, which was held not retroactive in *DeStefano v. Woods*, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968).

**12.** One could as well say that high speed highway driving is a devastating social problem—as there is strong evidence that the fifty-five m.p.h. limit saved thousands of lives each year. Or that cigarette smoking, which is so addictive and is responsible for so much death and disability, is a devastating social problem. Are we to conclude that highway driving over eighty miles an hour, or selling cigarettes to a minor, must, if prosecuted criminally, entitle the accused to a jury trial, even where the maximum sentence possible does not exceed ninety days' confinement?

be imposed after a first conviction for driving while intoxicated. *Given that the classification of state crimes differs widely among the States, the penalty that may attach to any particular offense seems to provide the clearest and most consistent indication of the State's interest* in arresting individuals suspected of committing that offense." *Id.,* 104 S.Ct. at 2100 n. 14 (emphasis added).[13]

Certainly these remarks, joined in by six justices, are to be given greater weight than those in the dissenting opinion in *Welsh.*[14]

I turn now to the majority's analysis of the law in the several states. The majority asserts that only six states deny the right to jury trial on DWI charges and that at least twenty-four states guarantee a jury trial in such cases, citing the Annotation in 16 A.L.R.3d 1373 (1967 and Supp.1986), *Jenkins,* 780 F.2d at 474 & n. 4, and *Craner,* 652 F.2d at 27 n. 5. There are several fundamental flaws in this approach.

To begin with, neither the referenced authorities nor any other compilation I have found purports to say that *only* six states deny a jury trial for DWI. The referenced A.L.R.3d Annotation *covers* only some nineteen states in all; *Jenkins* refers generally to twenty-four states; *Craner* only to the Ninth Circuit states. In other words, these sources indicate that

about a fourth or a fifth of the states studied do not authorize a jury for DWI. But, even if forty-four states allow a jury,[15] and do so *because* they regard DWI as serious, while only six do not, that would not be decisive. *Baldwin* considered it decisive that New York *City, alone* in the entire nation, did not authorize a jury where more than six months' imprisonment could be imposed. *Clawans* obviously did not feel free to disregard the practices of thirteen states, even where considerations of federalism were not implicated. More recently, the Court has refused to condemn a practice as unconstitutional notwithstanding that it is rejected by forty-eight states and followed only by two. *Martin v. Ohio,* — U.S. ——, 107 S.Ct. 1098, 1103, 94 L.Ed.2d 267 (1987). It appears that at least in Florida, Louisiana, Nevada, New Hampshire, New Mexico, New Jersey, and Puerto Rico,[16] and perhaps in other states as well, a jury trial is not required for DWI. I see no warrant for our requiring these seven jurisdictions to conform their practice to that of other states, even all the others.

Further, the majority does not analyze *why* the states that provide jury trials do so. Certainly *some* of them appear to do so because they consider DWI *intrinsically* serious, regardless of the penalty. *See, e.g., Parham v. Municipal Court,* 86 S.D. 531, 199 N.W.2d 501 (1972). Such states,

---

**13.** Justice Blackmun, concurring in *Welsh,* added the observation that Wisconsin, in its leniency to those guilty of DWI, was like an overly "indulgent parent." He then noted, "But if Wisconsin and other States choose by legislation thus to regulate their penalty structure, there is, unfortunately, nothing in the United States Constitution that says they may not do so." *Id.,* 104 S.Ct. at 2100, 2101.

**14.** Moreover, it is clear that the *Welsh* dissent was not advocating that the federal judiciary "trump" Wisconsin's characterization of DWI, but rather that Wisconsin was *free both* to treat that offense as one of civil forfeiture and *also* to authorize arrest therefor without a warrant (as did the Wisconsin statute), which might be made in-home in exigent circumstances. *Id.* at 2101, 2104 (dissenting opinion of Justice White).

**15.** There is, however, nothing that I am aware of which indicates that as many as even forty states allow a jury in all DWI prosecutions.

**16.** *See e.g., State v. Parker,* 87 Fla. 181, 100 So. 260 (1924); *City of Gainesville v. Hilliard,* 207 So.2d 520 (Fla.App.), *approved,* 213 So.2d 689 (Fla.1968), *appeal dism'd for want of a substantial federal question,* 393 U.S. 321, 89 S.Ct. 556, 21 L.Ed.2d 517 (1969) (per curiam); *Whirley v. State,* 450 So.2d 836 (Fla.1984); *City of Monroe v. Wilhite,* 255 La. 838, 233 So.2d 535 (1970), *cert. denied,* 400 U.S. 910, 91 S.Ct. 136, 27 L.Ed.2d 150 (1970); *State v. Smith,* 99 Nev. 806, 672 P.2d 631 (1983); *State v. Morrill,* 123 N.H. 707, 465 A.2d 882 (1983); *City of Albuquerque v. Arias,* 64 N.M. 337, 328 P.2d 593 (1958); *Hamilton v. Walker,* 65 N.M. 470, 340 P.2d 407 (1959); *State v. Sweat,* 78 N.M. 512, 433 P.2d 229 (App. 1967); *State v. Rodgers,* 91 N.J.L. 212, 102 A. 433 (1917); *Klinges v. Court of Common Pleas,* 3 N.J.Misc. 1084, 4 N.J.Misc. 7, 130 A. 601 (1925); *State v. Roth,* 154 N.J.Super. 363, 381 A.2d 406 (1977); *Matos v. Rodriguez,* 440 F.Supp. 673 (D.Puerto Rico 1976).

however, do not appear to be as numerous as those which deny a jury in DWI. Other states appear to require a jury simply because the maximum penalty exceeds the *Baldwin* level. *See, e.g., State v. Dickson,* 9 Kan.App.2d 425, 680 P.2d 313, 315 (1984). A substantial number of states may fall in this category. *See Jenkins,* 780 F.2d at 474 n. 4. There is a significant number of states, however, which grant a jury in DWI cases simply because they do not recognize the "petty" offense doctrine, and so grant a jury trial in *all* criminal cases, "petty" or not. Obviously, the jury trial practice in these states tells us absolutely *nothing* about how seriously they regard DWI.

Such states include Texas [17] and apparently Mississippi.[18] California, Indiana, Maine, Oregon, South Carolina, and Vermont also appear to be in this category.[19] There are doubtless other states which fit this pattern. Alaska for all practical purposes does, as there the "petty" offense doctrine is limited to fine only cases. *Baker v. City of Fairbanks,* 471 P.2d 386, 401–02 (Alaska 1970).[20] Several other states appear to follow the same rule as Alaska, treating as nonpetty *any* offense for which *any* incarceration may be imposed. *See Whirley v. State,* 450 So.2d 836, 841 (Fla.1984) (dissenting opinion of Boyd, J., citing cases).

**17.** In Texas, it has always been the rule that *any* criminal prosecution entitles the defendant to a jury. *See Burns v. La Grange,* 17 Tex. 415 (1856) (offense authorizing maximum of $30 fine and no imprisonment); *Smith v. San Antonio,* 17 Tex. 644 (1856) (permitting gambling on premises, maximum penalty $100 fine, in default of payment of which up to sixty days' confinement). This early practice has been carried forward and the "petty" offense doctrine is not recognized. *See* 21 Tex.Jur. III *Criminal Law* § 1485. The accused is entitled to a jury trial in *all* criminal prosecutions, even those in the justice court and corporation court. Tex. Code Crim.Proc. arts. 45.24, 45.25. Neither court can sentence to prison, they can only fine, and in the justice court the fine is limited to $200, as it was in the corporation court until 1983 when it was raised to $1,000 for certain purely local offenses, being limited to $200 in all other cases. Tex.Code Crim.Proc. arts. 4.11, 4.14; *Ex parte Morris,* 168 Tex.Cr.R. 281, 325 S.W.2d 386 (1959).

**18.** In Mississippi, it appears that the accused is entitled to a jury in *any* criminal proceeding in the justice court, which is apparently the lowest level of state court. Miss.Code Ann. § 99–33–9.

**19.** *See Baker v. City of Fairbanks,* 471 P.2d 386, 403 (Alaska 1970) (referring to "jurisdictions such as California which provide jury trial for all offenses, regardless of type"); *Gillespie v. Gilmore,* 159 Ind.App. 449, 307 N.E.2d 480, 482 (1974); *State v. Morrill,* 123 N.H. 707, 465 A.2d 882, 885 (1983) ("[u]nlike our neighboring states of Maine and Vermont, we do not require as a matter of constitutional right that a jury trial be available even for petty criminal offenses"); *Brown v. Multnomah County District Court,* 29 Or.App. 917, 566 P.2d 522, 526 & n. 5 (1977) (concluding "it is probable that" the Oregon constitution, modeled in this respect on that of Indiana, "extends the right to a jury trial in petty offense criminal prosecutions"), *rev'd on other grounds Brown v. Multnomah County District Court,* 280 Or. 95, 570 P.2d 52, 55 (1977)

(holding that Oregon constitution *does* so extend jury trial right); *United States v. Jenkins,* 780 F.2d 472, 474–75 (4th Cir.1986) (South Carolina grants jury trial "to all offenses within a magistrate's jurisdiction").

It is true that Oregon and Maine have held that statutes purporting to authorize "civil" prosecution of DWI, without a jury, are invalid under their constitutions. *See Brown v. Multnomah County District Court,* 280 Or. 95, 570 P.2d 52 (1977); *State v. Freeman,* 487 A.2d 1175 (Me. 1985). But, given that these states do not recognize "petty" criminal offenses, but require a jury in *all* criminal prosecutions, the issue necessarily was whether DWI was *any* kind of criminal offense, not whether it was a "petty" criminal offense. To hold that DWI is a criminal offense, despite being labeled civil, is not (unless we, too, reject the "petty" offense doctrine) the same as holding that it is not a "petty" criminal offense. *See, e.g., Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972).

**20.** Similarly, in still other states, DWI may be tried before a jury because of statutory provisions that tell us next to nothing about how intrinsically serious that particular offense is regarded. *See Evans v. Lambert,* 418 P.2d 217 (Okl.Cr.App.1966) (law denying jury trial invalid only as a local act, so statewide law that jury is allowed in all cases is applied); *Miller v. Winstead,* 75 Idaho 262, 270 P.2d 1010 (1954) (generally applicable state statutory provisions). Similarly, in Nebraska, the statutes have been construed to authorize a jury trial in DWI cases, as those are within the general statutory definition of misdemeanors (as opposed to traffic offenses). *State v. Karel,* 204 Neb. 573, 284 N.W.2d 12 (1979). But, DWI is regarded as a petty offense, as to which there is no constitutional entitlement to a jury. *State v. Amick,* 173 Neb. 770, 114 N.W.2d 893, 895–96 (1962). In Washington, a jury is allowed because of the statute providing for such in any case in which a license may be suspended. *Artis v. Rowland,* 64 Wash.2d 576, 392 P.2d 815 (1964).

In sum, contrary to the assertion of the majority, a review of the state cases discloses no overwhelming consensus that DWI is intrinsically so serious that it cannot be classified as a "petty" offense even where its maximum penalty is below the *Baldwin* threshold.

The majority also relies on what it perceives to be seriously adverse "collateral consequences." Mention is made of increase in insurance premiums. But that will also often result from a couple of trivial "fender-benders" or minor traffic tickets. Public opprobrium is alluded to. That, of course, may well significantly vary from state to state, as do attitudes toward such activities as gambling and, indeed, drinking. Though we are rather poorly placed to gauge that sort of thing, I strongly suspect there is more public opprobrium attached to public drunkenness or disorderly conduct than there is to first offense DWI.

Finally, the majority calls attention to the sixty-day driver's license suspension. However, the sixty-day suspension period commences upon notification of conviction or guilty plea, La.Rev.Stat. § 32:414(A)(1), and hence is *meaningless* to one confined for, say, five months, a period well within the *Baldwin* criteria. The license suspension in such a case will be long over by the time the defendant is out of jail and free to drive. It is wholly without significance to an individual that during the time he is in jail his driver's license is not operative. License suspension is hence of *any* meaning *only* to the extent the defendant serves *less* than sixty days in prison. The question then becomes whether a sentence under which the defendant will serve, say, twenty days in jail, and also be unable to drive for forty days thereafter because his license is suspended, is more severe than one under which the defendant will serve, say, ninety days in jail (during all of which time he is for that reason unable to drive). If common sense does not supply the answer to this question, then surely *Frank* does. There, three years' probation, though a significant infringement of freedom, was deemed not sufficiently onerous to make an otherwise "petty" offense seri-

ous. As *Frank* stated (89 S.Ct. at 1506–07 & n. 6):

> "Probation is, of course, a significant infringement of personal freedom, but it is certainly less onerous a restraint than jail itself.[6] In noncontempt cases, Congress has not viewed the possibility of five years' probation as onerous enough to make an otherwise petty offense 'serious.'

---

"[6] Petitioner is required to make monthly reports to his probation officer, associate only with law-abiding persons, maintain reasonable hours, work regularly, report all job changes to his probation officer, and not leave the probation district without the permission of his probation officer."

Moreover, it seems wholly incongruous to now hold that possible license suspension tips the scale to jury trial entitlement, when we have already held "that a defendant need not be informed, before pleading guilty to a charge of driving while intoxicated, that as a collateral consequence of his conviction, his driver's license will be suspended." *Moore v. Hinton*, 513 F.2d 781, 782–83 (5th Cir.1975). Further, several courts have held that license suspension does not suffice to take DWI out of the "petty" offense category. *See, e.g., Jenkins*, 780 F.2d at 474 (six-month automatic suspension); *Fletcher*, 505 F.Supp. at 1054; *Amick*, 114 N.W.2d at 895; *Morrill*, 465 A.2d at 886 (sixty-day to two-year suspension). I also note that license suspension is often incident to multiple minor moving traffic violations.

Ultimately, the majority's "collateral consequences" argument is a make-weight. The practical truth of the matter is that one who serves six months in jail and pays a $500 fine for Louisiana DWI suffers no more meaningful collateral consequences than one who serves the same time and pays the same fine for any other offense. Each suffers "collateral consequences" of loss of ability to earn a livelihood, loss of ability to drive, and public opprobrium. These are the inevitable consequences of serving such a sentence.

For these reasons, I dissent from the majority's holding that the Sixth Amend-

ment required Louisiana to afford Landry a jury trial for DWI, notwithstanding that its maximum sentence was "petty" under *Baldwin*.